T.C. Memo. 2011-164

UNITED STATES TAX COURT

GLENN PATRICK BOGUE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12291-09.                    Filed July 11, 2011.

Glenn Patrick Bogue, pro se.

<u>Carrie L. Kleinjan</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WELLS, <u>Judge</u>:  Respondent determined income tax deficiencies
of $5,900.85 and $6,738.11, and accuracy-related penalties
pursuant to section 6662(a)[1] of $1,180.17 and $1,347.62 for

---

[1]Unless otherwise indicated, section references are to the
Internal Revenue Code of 1986, as amended, and Rule references
are to the Tax Court Rules of Practice and Procedure.

petitioner's 2005 and 2006 tax years (the years in issue), respectively. After concessions, the issues we must decide are: (1) Whether petitioner is entitled to deduct certain transportation expenses for travel between his residence and worksites during the years in issue; (2) whether petitioner is entitled to certain depreciation deductions; (3) whether petitioner is entitled to certain deductions on his Schedule C; and (4) whether petitioner is liable for the accuracy-related penalties for the years in issue.

FINDINGS OF FACT

Some of the facts and certain exhibits have been stipulated. The parties' stipulations of fact are incorporated in this opinion by reference and are found accordingly. At the time he filed his petition, petitioner was a resident of New Jersey.

Petitioner is an independent contractor based in Cherry Hill, New Jersey. During the years in issue, petitioner lived in a house owned by his fiancé, Janis Pannepacker (Ms. Pannepacker) (we sometimes also refer to Ms. Pannepacker's house as petitioner's residence). During the years in issue, petitioner was building an addition to Ms. Pannepacker's house in his spare time.

During the years in issue, petitioner worked with Raymond J. Mancino (Mr. Mancino) to renovate residential properties. During his 2005 tax year, petitioner worked on properties at the

following locations: East Upsal Street, Philadelphia, Pennsylvania; Wissahickon Avenue, Philadelphia, Pennsylvania; and Seminole Avenue, Melrose Park, Pennsylvania. During his 2006 tax year, petitioner worked on properties at the following locations: Seminole Avenue, Melrose Park, Pennsylvania; Albright Avenue, Elkins Parks, Pennsylvania; and Coles Mills Road, Haddonfield, New Jersey. Those five work locations (hereinafter sometimes referred to as worksites) were 20.1, 15.7, 15.0, 14.7, and 4.0 miles, respectively, from petitioner's residence. He worked at each of the worksites for a number of months and then, when the project at that worksite was finished, he moved to another worksite. Petitioner also received some income from his work as a track team coach.

Petitioner declared bankruptcy during 1999, following a divorce. During 2003, the bank foreclosed on his house and sold it. The individual who purchased it razed the house before petitioner had removed all of his possessions, including some of his important records. Among the records he lost were the purchase records for his 1991 Ford Explorer and for his tools.

Petitioner's credit was affected by his bankruptcy, and consequently, he was unable to get a credit card or open a bank account. To provide a bank account for petitioner's use, Ms. Pannepacker opened an account in her name that was used only for

petitioner's expenses.  Although Ms. Pannepacker wrote checks from the account at the direction of petitioner, both she and petitioner treated all of the funds in the account as petitioner's.

On his returns for the years in issue, petitioner claimed deductions for a variety of expenses related to his transportation between his residence and the worksites.  He claimed deductions for car and truck expenses of $9,232 and $9,657.50 on Schedules C, Profit or Loss from Business, attached to his tax returns for 2005 and 2006, respectively.  In addition to car and truck expenses, petitioner deducted as part of his "Other Expenses" on his Schedules C amounts for tolls that he paid on the way to worksites.  He claimed deductions of $660 and $400 for those tolls during 2005 and 2006, respectively.  As part of the insurance expenses he reported on his Schedules C, petitioner deducted auto insurance expenses of $2,028 and $1,866 for 2005 and 2006, respectively.  Petitioner also deducted $650 in car rental expenses for the period during 2005 when he was renting a car after the 1991 Ford Explorer became inoperable.

Additionally, petitioner claimed a deduction of $4,600 for the depreciation of his 1991 Ford Explorer, which became inoperable during 2005.  The $4,600 he claimed as a depreciation deduction reflects petitioner's estimate of its "Kelley Blue Book" value when it became inoperable.

On his 2006 tax return, petitioner claimed depreciation of $400 for tools he purchased in a prior year.  His tool purchase records were lost when his house was destroyed during 2003, and he subsequently estimated the values of those tools for the purpose of depreciating them.

During the years in issue, petitioner had a storage shed at Ms. Pannepacker's house where he kept all of his tools when he was not using them.  However, he did not deduct any expense for depreciation of the storage shed on his tax return for either year.

During 2005, petitioner had a dispute with one of his clients over the payment of a bill and was arrested in Pennsylvania when the client reported to the police that petitioner had stolen a deposit.  In connection with that dispute, Ms. Pannepacker paid $398 to the clerk of court.  On his Schedule C for 2005, petitioner claimed a deduction for legal expenses of $1,250.  That amount also included $800 petitioner had paid a lawyer to represent him during 2003 but never claimed as a deduction.  He therefore deducted both of those expenses on his 2005 return.[2]

On the Schedule C attached to his 2006 return, petitioner claimed a deduction for $1,970 in legal expenses related to a

---

[2]The sum of petitioner's legal expenses from 2003 and 2005 is $1,198.  It is not clear from the record how he arrived at a deductible expense of $1,250.

lawsuit stemming from a contract dispute.  To substantiate those expenses, he offered canceled checks totaling $1,423 from Ms. Pannepacker to the law firm he retained to represent him.  He also provided part of the complaint filed in that lawsuit and the retainer agreement he signed with the law firm that represented him.  Petitioner was unable to find any other records to substantiate the full amount of his claimed legal expenses for 2006.

Petitioner used one of the rooms in Ms. Pannepacker's house as his office (office) during the years in issue, but he did not claim a deduction for the business use of his office. Petitioner used the computer in the office to research parts for building houses and to keep track of his billing.  He also used the landline telephone in the office to contact building supply stores.

Petitioner claimed $1,200 for office expenses on his tax returns for both of the years in issue, but respondent allowed only $600 for each year.  Petitioner now contends that he should be entitled to deduct office expenses of $2,184 for each of the years in issue.  To substantiate his claimed expenses, petitioner submitted a receipt from Ms. Pannepacker stating that petitioner pays her the following amounts each month:  $50 for Internet service; $30 for a landline telephone; $20 for computer and printer use; and $82 for petitioner's share of a joint cellular

phone plan.  Petitioner submitted several invoices in Ms. Pannepacker's name, including an invoice for Internet and cable television that shows that Ms. Pannepacker paid only $33 per month for Internet service.  Ms. Pannepacker also accesses the Internet through her laptop at her home.

On the Schedule C attached to his 2005 tax return, petitioner claimed "Other Expenses" of $1,000 for the settlement of a purchase dispute with Builder's Prime Window.  On his 2006 tax return, petitioner claimed Schedule C "Other Expenses" of $2,200 for books that he purchased during the preceding 5 years. He eventually used those books as part of his research for a book series that he recently published through a self-publishing house.  Petitioner did not deduct those expenses as he paid them; instead, he deducted all of them on his 2006 tax return because it was not until 2006 that he firmly decided that he would write the books.[3]

Petitioner timely filed his Federal income tax returns for the years in issue.  On April 23, 2009, respondent issued and mailed to petitioner a notice of deficiency.  Petitioner timely filed his petition with this Court.

---

[3]Petitioner stated with regard to his work on the books that during 2006, "I know I'm going forward."

OPINION

I.  Whether the Burden of Proof Has Shifted Under Section 7491

We consider as a preliminary matter petitioner's contention that the burden of proof has shifted to respondent pursuant to section 7491(a).  Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer has the burden of proving it incorrect.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Section 7491(a)(1) provides an exception that shifts the burden of proof to the Commissioner as to any factual issue relevant to a taxpayer's liability for tax if:  (1) The taxpayer introduces credible evidence with respect to that issue; and (2) the taxpayer satisfies certain other conditions, including substantiation of any item and cooperation with the Government's requests for witnesses, documents, other information, and meetings.  Sec. 7491(a)(2); see also Rule 142(a)(2).  The taxpayer bears the burden of proving that the taxpayer has met the requirements of section 7491(a).  Rolfs v. Commissioner, 135 T.C. 471, 483 (2010).

As we explain below, petitioner has failed to present credible evidence sufficient to substantiate most items.  On those issues, the burden of proof remains with petitioner.  With respect to a few factual issues, petitioner presented credible evidence sufficient to substantiate his expenses.  However, because we decide those issues in petitioner's favor on the

preponderance of the evidence, the allocation of the burden of proof is immaterial.  See Knudsen v. Commissioner, 131 T.C. 185, 189 (2008).  We therefore need not decide whether petitioner has also met the conditions of section 7491(a)(2) required to shift the burden of proof to respondent with respect to those issues.

II.  Whether Petitioner Is Entitled to the Claimed Deductions

Deductions are a matter of legislative grace, and taxpayers generally bear the burden of proving their entitlement to the deductions claimed.  Sec. 6001; INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).  Section 162(a) permits "as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  To be deductible, ordinary and necessary expenses must be "directly connected with or pertaining to the taxpayer's trade or business".  Sec. 1.162-1(a), Income Tax Regs.  Additionally, section 212 generally allows the deduction of ordinary and necessary expenses paid or incurred during the tax year for the production or collection of income.  Sec. 1.212-1(d), Income Tax Regs.  Such expenses must be reasonable in amount and bear a reasonable and proximate relationship to the production or collection of taxable income.  Id.  However, a taxpayer may not deduct personal expenses.  Sec. 262(a).

Generally, a taxpayer must keep records sufficient to establish the amounts of the items reported on his Federal income tax return. Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs. In the event that a taxpayer establishes that a deductible expense has been paid but is unable to substantiate the precise amount, we generally may estimate the amount of the deductible expense, bearing heavily against the taxpayer whose inexactitude in substantiating the amount of the expense is of his own making. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). We generally will not estimate a deductible expense, however, unless the taxpayer presents sufficient evidence to provide some basis upon which an estimate may be made. Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

Section 274(d) supersedes the Cohan doctrine for certain categories of expenses. Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969). Generally, a deduction is disallowed for an expense for travel, meals and entertainment, or listed property unless the taxpayer properly substantiates: (1) The amount of such expense; (2) the time and place of the expense; (3) the business purpose; and (4) in the case of meals and entertainment, the business relationship between the taxpayer and the persons being entertained. Sec. 274(d). Listed property includes passenger automobiles, any type of property generally used for entertainment or recreation, any

computer or peripheral equipment, and any cellular phone or other similar telecommunications equipment.[4]  Sec. 280F(d)(4). Generally, deductions for expenses subject to the strict substantiation requirements of section 274(d) must be disallowed in full unless the taxpayer satisfies every element of those requirements.  Sanford v. Commissioner, supra at 827-828; Larson v. Commissioner, T.C. Memo. 2008-187; sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  Deductions for listed property that is used both personally and in the taxpayer's business are disallowed unless a taxpayer establishes the amount of business use of the property.  Kinney v. Commissioner, T.C. Memo. 2008-287; Olsen v. Commissioner, T.C. Memo. 2002-42, affd. 54 Fed. Appx. 479 (9th Cir. 2003); sec. 1.274-5T(b)(6)(i)(B), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Taxpayers may substantiate their deductions by either adequate records or sufficient evidence that corroborates the taxpayer's own statement.  Sec. 274(d).  To satisfy the adequate records requirement, a taxpayer must maintain records and documentary evidence that in combination are sufficient to

---

[4]Sec. 280F(d)(4) has since been amended by the Creating Small Business Jobs Act of 2010, Pub. L. 111-240, sec. 2043(a), 124 Stat. 2560, which removed cellular phones and other similar telecommunications equipment from "listed property".  However, that amendment is effective only for tax years beginning after Dec. 31, 2009.

establish each element of an expenditure or use.  Larson v.
Commissioner, supra; sec. 1.274-5T(c)(2)(i), Temporary Income Tax
Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).  As we have stated, a
contemporaneous log is not required, but corroborative evidence
used to support a taxpayer's reconstruction of the expenditure
"'must have a high degree of probative value to elevate such
statement'" to the level of credibility of a contemporaneous
record.  Larson v. Commissioner, supra (quoting section 1.274-
5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6,
1985)).

In the absence of adequate records, a taxpayer alternatively
may establish an element of an expenditure by "his own statement,
whether written or oral, containing specific information in
detail as to such element" and by "other corroborative evidence
sufficient to establish such element."  Larson v. Commissioner,
supra; sec. 1.274-5T(c)(3), Temporary Income Tax Regs., 50 Fed.
Reg. 46020 (Nov. 6, 1985).  Even if an expense would otherwise be
deductible, the deduction may still be denied if there is
insufficient substantiation to support it.  See sec. 1.274-5T(a),
Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).
We do not estimate under the Cohan doctrine expenses that are
subject to the requirements of section 274(d).  Sanford v.
Commissioner, supra at 827; Larson v. Commissioner, supra.

A.    Commuting Expenses

Respondent contends that many of petitioner's expenses, including the amounts petitioner claimed for car and truck expenses, tolls, auto insurance, and car rental expenses, are not deductible because they are commuting expenses.  As a general rule, expenses for traveling between one's home and one's place of business or employment constitute commuting expenses and, consequently, are nondeductible personal expenses.  See sec. 262(a); Fausner v. Commissioner, 413 U.S. 838 (1973); Commissioner v. Flowers, 326 U.S. 465 (1946); Feistman v. Commissioner, 63 T.C. 129, 134 (1974).

As the Supreme Court explained in Commissioner v. Flowers, supra at 473, the core reason commuting expenses are not deductible is that the taxpayer makes a personal choice about where to live.  In Flowers, the taxpayer was a longtime resident of Jackson, Mississippi, who accepted a job that required him to spend most of his time in Mobile, Alabama.  For personal reasons, the taxpayer decided to continue to maintain a home in Jackson and made repeated trips between Jackson and Mobile.  The Supreme Court held that the taxpayer was not entitled to deduct the costs of traveling from Jackson to Mobile, despite the substantial distance, because those costs were incurred for personal reasons and not in the pursuit of the business of his employer.  The Supreme Court explained:

The facts demonstrate clearly that the expenses were not incurred in the pursuit of the business of the taxpayer's employer, the railroad. Jackson was his regular home. Had his post of duty been in that city the cost of maintaining his home there and of commuting or driving to work concededly would be non-deductible living and personal expenses lacking the necessary direct relation to the prosecution of the business. The character of such expenses is unaltered by the circumstance that the taxpayer's post of duty was in Mobile, thereby increasing the costs of transportation, food and lodging. Whether he maintained one abode or two, whether he traveled three blocks or three hundred miles to work, the nature of these expenditures remained the same.

The added costs in issue, moreover, were as unnecessary and inappropriate to the development of the railroad's business as were his personal and living costs in Jackson. They were incurred solely as the result of the taxpayer's desire to maintain a home in Jackson while working in Mobile, a factor irrelevant to the maintenance and prosecution of the railroad's legal business. * * * The fact that he traveled frequently between the two cities and incurred extra living expenses in Mobile, while doing much of his work in Jackson, was occasioned solely by his personal propensities. * * *

Id. at 473-474. By holding that commuting expenses are personal, the Supreme Court placed those expenses in the category of nondeductible expenses now governed by section 262(a). Such personal expenses contrast with trade or business expenses, which are deductible provided they satisfy the requirements of section 162. Section 162(a) provides that a deduction is allowed for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business".

Three exceptions to the general rule that commuting expenses are nondeductible have evolved since the Supreme Court decided Flowers. The first exception is that expenses incurred traveling

between a taxpayer's residence and a place of business are deductible if the residence is the taxpayer's principal place of business (home office exception). The second exception is that travel expenses between a taxpayer's residence and temporary work locations outside of the metropolitan area where the taxpayer lives and normally works are deductible (temporary distant worksite exception). The third exception is that travel expenses between a taxpayer's residence and temporary work locations, regardless of the distance, are deductible if the taxpayer also has one or more regular work locations away from the taxpayer's residence (regular work location exception). Petitioner contends that his transportation expenses driving between his residence and worksites qualify under all three exceptions; we will consider each exception in turn.

### 1. The Home Office Exception

The first exception, that expenses incurred traveling between a taxpayer's residence and a place of business are deductible if the residence is the taxpayer's principal place of business because a home office is located at the residence, is a judicially created exception.[5] See Strohmaier v. Commissioner, 113 T.C. 106, 113-114 (1999); Wis. Psychiatric Servs. v.

---

[5]The first exception is also recognized under Rev. Rul. 99-7, 1999-1 C.B. 361, 362, which states: "If a taxpayer's residence is the taxpayer's principal place of business * * *, the taxpayer may deduct daily transportation expenses incurred in going between the residence and another work location".

Commissioner, 76 T.C. 839, 849 (1981); Curphey v. Commissioner, 73 T.C. 766, 777-778 (1980).  In the seminal case on the home office exception, Curphey v. Commissioner, supra, the taxpayer maintained a home office in his residence that qualified as his "principal place of business" under section 280A(c)(1)(A).  We stated:

> Petitioner made his trips from his home office (which we have held to be the principal place of business with respect to his rental activities) to his rental properties for a business purpose, i.e., to carry out management duties at those properties.  We see no reason why the rule that local transportation expenses incurred in travel between one business location and another are deductible should not be equally applicable where the taxpayer's principal place of business with respect to the activities involved is his residence. * * *

Id. at 777-778 (citations omitted).  According to the terms of this judicially created home office exception, the taxpayer's residence must qualify as the taxpayer's "principal place of business", and we have consistently equated the "principal place of business" requirement for the home office exception with the "principal place of business" requirement under section 280A. See Walker v. Commissioner, 101 T.C. 537, 546 (1993); Curphey v. Commissioner, supra at 777.  Consequently, although petitioner did not claim a deduction for the business use of his residence pursuant to section 280A(c)(1), we nonetheless must consider whether petitioner's office in his residence qualifies as his principal place of business under that statute.

Section 280A(a) provides that, as a general rule, no deduction is allowed with respect to the taxpayer's residence. Section 280A(c)(1) provides several exceptions to that general rule:

> Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis--
>
> > (A) as the principal place of business for any trade or business of the taxpayer,
> >
> > (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or
> >
> > (C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business.
>
> * * * For purposes of subparagraph (A), the term "principal place of business" includes a place of business which is used by the taxpayer for the administrative or management activities of any trade or business of the taxpayer if there is no other fixed location of such trade or business where the taxpayer conducts substantial administrative or management activities of such trade or business.

Where a taxpayer's business is conducted in part at the taxpayer's residence and in part at another location, the Supreme Court has held that there are two primary considerations in deciding whether the home office qualifies as the taxpayer's principal place of business: (1) The relative importance of the functions or activities performed at each location; and (2) the time spent at each location. Commissioner v. Soliman, 506 U.S.

168, 175-177 (1993); Strohmaier v. Commissioner, supra at
111-112.

Since the Supreme Court's decision in Soliman, Congress has
added the flush language following section 280A(c)(1)(C) to
expand the scope of the home office deduction.  That flush
language was intended to permit taxpayers who manage business
activities from their homes to claim a home office deduction even
if they would not qualify under the Soliman standard.[6]  However,

---

[6]The House report accompanying the amendment explained its
purpose as follows:

   The Committee believes that the Supreme Court's
decision in Soliman unfairly denies a home office deduction
to a growing number of taxpayers who manage their business
activities from their homes.  Thus, the statutory
modification adopted by the Committee will reduce the
present-law bias in favor of taxpayers who manage their
business activities from outside their home, thereby
enabling more taxpayers to work efficiently at home, save
commuting time and expenses, and spend additional time with
their families.  Moreover, the statutory modification is an
appropriate response to the computer and information
revolution, which has made it more practical for taxpayers
to manage trade or business activities from a home office.

   *     *     *     *     *     *     *

   Section 280A is amended to specifically provide that a
home office qualifies as the "principal place of business"
if (1) the office is used by the taxpayer to conduct
administrative or management activities of a trade or
business and (2) there is no other fixed location of the
trade or business where the taxpayer conducts substantial
administrative or management activities of the trade or
business.  As under present law, deductions will be allowed
for a home office meeting the above two-part test only if
the office is exclusively used on a regular basis as a place
of business by the taxpayer * * *

Congress did not change the requirement that, in order to qualify as the principal place of business, the home office must be regularly and exclusively used for business purposes. The exclusive-use requirement in section 280A(c)(1) is an "all-or-nothing" standard. <u>Hamacher v. Commissioner</u>, 94 T.C. 348, 357 (1990).

Our first consideration is whether petitioner's residence is his principal place of business, a prerequisite for qualification under the home office exception. Petitioner stored tools in a shed at his residence, used the telephone in his office in his residence to contact building supply stores, and used his desktop computer in his office to research parts for building houses and to keep track of his billing. Petitioner, however, offered no testimony or other evidence that he used the office in his residence exclusively for his business. Although Ms. Pannepacker testified that she did not use the office at all during regular business hours, she did not include in her testimony anything regarding her use of it during evenings or weekends. Petitioner did testify that he used a separate storage shed exclusively for his business, and Ms. Pannepacker confirmed petitioner's testimony on that point. It is clear from petitioner's arguments

---

H. Rept. 105-148, at 407 (1997), 1997-4 C.B. (Vol. 1) 319, 729; see also H. Conf. Rept. 105-220, at 464 (1997), 1997-4 C.B. (Vol. 2) 1457, 1934.

about the storage shed, and his direct examination of Ms. Pannepacker on that subject, that he understood the importance of exclusive use.  Nonetheless, he failed to offer any testimony or other evidence that he used his home office exclusively for his business.

Petitioner also argues that his use of the storage shed exclusively for business entitles him to deduct his commuting expenses.  Although deductions are allowed for separate structures used in connection with the taxpayer's business, pursuant to section 280A(c)(1)(C), the use of such separate structures for business does not qualify the taxpayer's residence as his principal place of business.  The term "principal place of business" is set forth in section 280A(c)(1)(A) and the flush language following section 280A(c)(1)(C) that, by its terms, clarifies only section 280(c)(1)(A).  Accordingly, petitioner's exclusive use of his storage shed does not make his residence his principal place of business.

Petitioner has the burden of proof on the home office exception, yet he has failed to produce testimony or documentary evidence that he used his home office exclusively for business purposes.  Accordingly, we conclude that petitioner has not shown that his residence was his principal place of business.  Consequently, we hold that petitioner is not entitled to deduct his commuting expenses under the first exception.  See Strohmaier

v. Commissioner, 113 T.C. at 114 ("Since petitioner's residence was not his 'principal place of business', it follows that the expenses relating to the disallowed mileage for each year constitutes commuting expenses that are not deductible."); see also Romer v. Commissioner, T.C. Memo. 2001-168 (holding that because the taxpayer's residence did not qualify as his principal place of business under section 280A(c)(1)(A), he was not entitled to deduct travel expenses to and from his home); Beale v. Commissioner, T.C. Memo. 2000-158 (same).

Petitioner relies on Walker v. Commissioner, 101 T.C. 537 (1993), to argue that his travel expenses between his home and his worksites are deductible under the home office exception even if his home does not qualify as his "principal place of business". The revenue ruling in effect at the time we decided Walker was Rev. Rul. 90-23, 1990-1 C.B. 28, which allowed a taxpayer to deduct expenses traveling between a "regular place of business" and a "temporary work location". In Walker, we interpreted "regular place of business" under Rev. Rul. 90-23, supra, to include a taxpayer's residence even though his residence did not qualify as his "principal place of business" under section 280A(c)(1). We held that the "regular place of business" standard employed by the Commissioner in Rev. Rul. 90-23, supra, was a less exacting standard than the "principal place of business" standard adopted in our prior cases. Id. at 548.

We treated the Commissioner's use of the "regular place of business" standard as a concession that effectively expanded the scope of the home office exception. Id. at 550. The IRS never acquiesced to our interpretation of "regular place of business", and both Rev. Rul. 94-47, 1994-2 C.B. 18, and Rev. Rul. 99-7, 1999-1 C.B. 361, explicitly exclude a taxpayer's residence from what is considered a "regular work location". In Strohmaier v. Commissioner, supra at 114, we made it clear that our holding in Walker was limited to the "regular place of business" standard under Rev. Rul. 90-23, supra. In Strohmaier, we held that after Rev. Rul. 90-23, supra, was superseded by Rev. Rul. 94-47, supra, the home office exception remained limited to instances in which the taxpayer's residence qualifies under section 280A(c)(1) as the taxpayer's "principal place of business". Id. Accordingly, we decline to accept petitioner's argument that our holding in Walker permits him to deduct transportation expenses between his residence and his worksites.

2. The Temporary Distant Worksite Exception

The temporary distant worksite exception is also rooted in caselaw. In Schurer v. Commissioner, 3 T.C. 544 (1944), we held that the taxpayer was entitled to deduct travel and lodging expenses stemming from a series of temporary worksites at which the taxpayer worked during the year, all of which were distant from the taxpayer's residence. Our decision in that case was

based, in part, on the fact that the taxpayer had no principal place of business during the tax year. See also Leach v. Commissioner, 12 T.C. 20 (1949). The IRS acquiesced to our decision in Schurer and later issued Rev. Rul. 190, 1953-2 C.B. 303, which stated that when an employee "is employed for a strictly temporary (as distinguished from an indefinite) period on a construction project situated at a distance from the metropolitan area in which he is regularly employed, he may deduct * * * his actual expenses incurred for daily transportation between his principal or regular place of employment and such job".

Originally, when courts decided whether transportation expenses were nondeductible commuting expenses, they focused only on the nature of the job: whether it was of temporary or indefinite duration. In Peurifoy v. Commissioner, 358 U.S. 59, 60 (1958), the Supreme Court summarized the law as follows:

> Generally, a taxpayer is entitled to deduct unreimbursed travel expenses under this subsection only when they are required by "the exigencies of business." * * *
>
> To this rule, however, the Tax Court has engrafted an exception which allows a deduction for expenditures of the type made in this case when the taxpayer's employment is "temporary" as contrasted with "indefinite" or "indeterminate." * * *

However, over the years, a number of courts added an additional requirement that the temporary worksite had to be distant from the area where the taxpayer lives and normally works. See Dahood

v. United States, 747 F.2d 46, 48 (1st Cir. 1984); Kasun v. United States, 671 F.2d 1059, 1061 (7th Cir. 1982); Epperson v. Commissioner, T.C. Memo. 1985-382.  The Court of Appeals for the First Circuit explained the reasoning underlying the temporary distant worksite exception as follows:

> A judicial exception has been carved out of this general rule [that commuting expenses are nondeductible] to cover instances when people commute long distances to their workplaces for business, rather than personal, reasons. This exception permits taxpayers to deduct commuting expenses to a job that is temporary, as opposed to indefinite, in duration.  The exception has been deemed necessary because "it is not reasonable to expect people to move to a distant location when a job is foreseeably of limited duration."  Implicit in this exception is the requirement that the taxpayer commute to a worksite distant from his or her residence.  Without such a requirement, the absurd result would obtain of permitting a taxpayer, who commuted to a succession of temporary jobs, to deduct commuting expenses, no matter how close these jobs were to his residence.

Dahood v. United States, supra at 48 (citations omitted).

Consistent with the holdings of similar cases, the IRS has memorialized the temporary distant worksite exception in Rev. Rul. 99-7, 1999-1 C.B. at 361, which states:  "A taxpayer * * * may deduct daily transportation expenses incurred in going between the taxpayer's residence and a temporary work location outside the metropolitan area where the taxpayer lives and normally works."  The revenue ruling defines a temporary work location as one that "is realistically expected to last (and does in fact last) for 1 year or less".  Id.  Neither Rev. Rul. 99-7,

supra, nor any of its predecessors[7] defines the term "metropolitan area". The revenue ruling does not explain the rationale for the temporary distant worksite exception. However, as we read the revenue ruling, on the basis of the caselaw cited above, the revenue ruling recognizes that taxpayers whose work consists of many temporary worksites might not always have a choice about the location of those worksites. Although the taxpayer's choices about where to live and where to "normally work" are personal and it is assumed the taxpayer will live near the place of employment, it is unreasonable to expect that a taxpayer will move to a distant location for a temporary job. See Kasun v. United States, supra at 1061. The taxpayer's choice to take a temporary job at a remote location is therefore dictated by business needs more than personal preference.

Petitioner contends that because he lived in Cherry Hill, New Jersey, and most of his worksites were across the State line in Pennsylvania, those worksites were temporary work locations not within his "metropolitan area". Because "metropolitan area" is not defined in any revenue ruling, petitioner argues that we should refer to the Office of Management and Budget (OMB) for a definition of "metropolitan", which petitioner contends is an urban area with more than 50,000 people. However, petitioner is

_____

[7]Rev. Rul. 94-47, 1994-2 C.B. 18; Rev. Rul. 90-23, 1990-1 C.B. 28; Rev. Rul. 190, 1953-2 C.B. 303.

mistaken about how the OMB defines "metropolitan area".  The OMB defines a "metropolitan statistical area" or a "micropolitan statistical area" as "an area containing a recognized population nucleus and adjacent communities that have a high degree of integration with that nucleus."  Standards for Defining Metropolitan and Micropolitan Statistical Areas, 65 Fed. Reg. 82,228 (Dec. 27, 2000).  A metropolitan statistical area is distinguished from a micropolitan statistical area by having a population core of at least 50,000.  However, petitioner's reference to the definitions used by the OMB does not support his contention because, as defined by the OMB, petitioner's residence in Cherry Hill, New Jersey, and all of his temporary worksites are part of the Philadelphia-Camden-Wilmington Metropolitan Statistical Area.  See Office of Mgmt. & Budget, Exec. Office of the President, OMB Bull. No. 06-01, Update of Statistical Area Definitions and Guidance on Their Uses (2005).

Nonetheless, we decline to adopt any such rigid definition for deciding when a taxpayer's temporary worksites take him "outside the metropolitan area where the taxpayer lives and normally works."  Adopting such a rigid definition would inevitably lead to some absurd results.  In some situations, a rigid definition would disallow the deduction of travel expenses that should be permitted.  The metropolitan statistical areas (MSAs) defined by the OMB are often quite large, such as the

Philadelphia-Camden-Wilmington MSA. A taxpayer who lives and normally works near the outskirts of one MSA may normally drive only 5 miles to and from worksites. However, if that taxpayer accepts work at a temporary worksite on the opposite end of the MSA, but still within the MSA, the taxpayer could end up driving as much as 100 miles each way yet not be able to deduct such transportation expenses because the worksite is still within the MSA.

In other situations, such a rigid definition would allow commuting expense deductions that should not be permitted. For instance, a taxpayer may live on the border of two MSAs. If that taxpayer normally has worksites in one MSA and only occasionally has worksites in the other MSA, the taxpayer would be permitted to deduct the expenses incurred in traveling to the worksites in the second MSA even if the distance traveled were no greater than that normally traveled when working at worksites in the first MSA. Accordingly, employing rigid definitions would frustrate the intent of the primary principle that commuting expenses are nondeductible.

Indeed, we conclude that respondent's use of the term "metropolitan area" is not helpful for answering the question of whether petitioner's travel expenses are deductible under the

temporary distant worksite exception.[8]  Instead, we will evaluate
the facts and circumstances to decide whether the travel expenses
in question were incurred in traveling to a worksite unusually
distant from the area where petitioner lives and normally works.
Such an approach is consistent with the approach historically
taken by a number of other courts.  See Ellwein v. United States,
778 F.2d 506, 511 (8th Cir. 1985) (holding that it was necessary
to consider whether the taxpayer's temporary worksites were
within the "work area" of the city that was the taxpayer's tax
home); Dahood v. United States, 747 F.2d at 48 (for commuting
expenses to a temporary worksite to be deductible, that temporary
worksite must be "distant from * * * [the taxpayer's]
residence"); Frederick v. United States, 603 F.2d 1292, 1295 (8th
Cir. 1979) (commuting expenses to a temporary worksite "a
considerable distance" from the taxpayer's residence were
deductible).

As the maps introduced by respondent at trial show,
petitioner's residence in Cherry Hill, New Jersey, is
approximately 10 miles east of Philadelphia.  Most of

---

[8]We are not bound by revenue rulings, and we evaluate them
based on the "power to persuade" standard articulated by the
Supreme Court in Skidmore v. Swift & Co., 323 U.S. 134 (1944).
See Taproot Admin. Servs., Inc. v. Commissioner, 133 T.C. 202,
208-209 (2009); PSB Holdings, Inc. v. Commissioner, 129 T.C. 131,
142 (2007).  Under that standard, the weight we give revenue
rulings "depends upon their persuasiveness and the consistency of
the Commissioner's position over time."  Taproot Admin. Servs.,
Inc. v. Commissioner, supra at 209.

petitioner's worksites during the years in issue were in Philadelphia or its suburbs to the north. Petitioner had five worksites that were 20.1, 15.7, 15.0, 14.7, and 4.0 miles from his residence. Consequently, it was petitioner's normal practice during the years in issue to travel about 15 miles from his residence to a worksite. There was nothing unusual about those trips. Even the worksite that was farthest from petitioner's residence was still within the city limits of Philadelphia. Given that four out of five of petitioner's worksites during the years in issue were in either Philadelphia or its suburbs to the north, we conclude that those areas are the areas where petitioner normally worked. Accordingly, we hold that he was not entitled to deduct travel expenses incurred in driving between his residence and those worksites. See Aldea v. Commissioner, T.C. Memo. 2000-136 (holding that, because it was the taxpayer's personal choice to live outside the area where most of her temporary worksites were located, she was not entitled to deduct her commuting expenses). Consequently, we conclude that petitioner is not eligible to deduct his commuting expenses under the temporary distant worksite exception.

3.    The Regular Work Location Exception

Unlike the first two exceptions, the regular work location exception is not rooted in caselaw. Rather, the regular work location exception was originally articulated by the Commissioner

in Rev. Rul. 90-23, supra. The current version of the regular

work location exception is found in Rev. Rul. 99-7, 1999-1 C.B.

at 362, which states: "If a taxpayer has one or more regular

work locations away from the taxpayer's residence, the taxpayer

may deduct daily transportation expenses incurred in going

between the taxpayer's residence and a temporary work location in

the same trade or business, regardless of the distance." Rev.

Rul. 99-7, supra, does not define "regular work location".

However, Rev. Rul. 90-23, 1990-1 C.B. at 28, defines "regular

place of business" as "any location at which the taxpayer works

or performs services on a regular basis." We infer that the same

definition should apply to "regular work location" under Rev.

Rul. 99-7, supra, except that a "regular work location" may not

include the taxpayer's residence. We also infer that, because

"regular work location" is contrasted with "temporary work

location", the two are mutually exclusive.

Rev. Rul. 90-23, 1990-1 C.B. at 29, explains the rationale

for the regular work location exception by analogy to Rev. Rul.

190, supra:

> A taxpayer who pays or incurs daily transportation
> expenses on trips between the taxpayer's residence and one
> or more regular places of business is like the taxpayer
> described in Rev. Rul. 190 who pays or incurs daily
> transportation expenses on trips between the taxpayer's
> residence and temporary work sites within the metropolitan
> area that is considered the taxpayer's regular place of
> business. Such daily transportation expenses are
> nondeductible commuting expenses. On the other hand, a
> taxpayer who has one or more regular places of business and

> who pays or incurs daily transportation expenses for trips between the taxpayer's residence and temporary work locations is like the taxpayer described in Rev. Rul. 190 who pays or incurs deductible daily transportation expenses for trips between the taxpayer's residence and temporary work sites outside the metropolitan area that is considered the taxpayer's regular place of business. Thus, for a taxpayer who has one or more regular places of business, daily transportation expenses paid or incurred in going between the taxpayer's residence and temporary work locations are deductible business expenses under section 162(a) of the Code regardless of the distance.

We do not follow the Commissioner's reasoning. It is unclear why the Commissioner considers analogous the situation where a taxpayer travels between the taxpayer's residence and a distant temporary work location and the situation where the taxpayer has one or more regular work locations and travels between the taxpayer's residence and a nearby temporary work location. The exception would be logical if it were limited to distant temporary work locations. However, as it stands, the regular work location exception reaches a result similar to what the Court of Appeals for the First Circuit labeled "absurd" when it held that there was an implicit requirement that, in order for travel expenses between a taxpayer's residence and a temporary work location to be deductible, the temporary work location must be distant from the taxpayer's residence. See Dahood v. United States, supra at 48. Nonetheless, we will treat the regular work location exception as a concession by the Commissioner.[9]

---

[9]Similarly, in Walker v. Commissioner, 101 T.C. 537, 550 (1993), we treated as a concession another portion of Rev. Rul.

In the instant case, petitioner's only work locations during the years in issues were worksites where he performed renovations.  All of those worksites were temporary as defined in Rev. Rul. 99-7, supra, and petitioner has not shown that he had other, regular work locations.[10]  Accordingly, petitioner has not established facts that would qualify him for respondent's concession.  Consequently, we conclude that petitioner is not entitled to deduct his commuting expenses under the regular work location exception.

Because petitioner has failed to qualify under any of the three exceptions, we hold that his expenses in traveling between his worksites and his residence were nondeductible commuting expenses.

## 4.  Other Travel Expense Deductions

Petitioner contends that his travel between his residence and his worksites should not be considered commuting because he was carrying his tools in his pickup truck.  However, the Supreme Court rejected a similar argument made by the taxpayer in Fausner

90-23, 1990-1 C.B. 28, that was inconsistent with our precedent but that was a concession in favor of the taxpayer.

[10]We reject petitioner's contention that his storage shed, his car, the bank, and various building supply stores should be considered regular work locations.  Petitioner has not established that he "[worked] or [performed] services on a regular basis" at any of those locations.  See Rev. Rul. 90-23, 1990-1 C.B. 28.

<u>v. Commissioner</u>, 413 U.S. at 839. In that case, the taxpayer was an airline pilot who argued that his commuting expenses were deductible because he used his automobile to transport the bags he needed for his job. <u>Id.</u> at 838. The Supreme Court rejected the taxpayer's argument but left open the possibility that a taxpayer could allocate expenses between the necessary costs for commuting and additional costs that might be incurred to transport job-related tools and materials. <u>Id.</u> at 839.

After <u>Fausner</u>, the IRS published Rev. Rul. 75-380, 1975-2 C.B. 59, stating that a taxpayer was entitled to deduct the cost of "transporting the work implements by the mode of transportation used in excess of the cost of commuting by the same mode of transportation without the work implements." However, petitioner did not provide any evidence that would allow us to decide what excess commuting expenses, if any, might be attributable to transporting his tools to and from his worksites. Because "any traveling expense" under section 162 is subject to the strict substantiation requirements of section 274(d), the <u>Cohan</u> doctrine does not apply, and we therefore will not estimate the amount of any additional deductible commuting expenses petitioner may have incurred by transporting his tools.[11]

---

[11]We reject petitioner's argument that the strict substantiation requirements of sec. 274(d) do not apply because petitioner's cars were trucks, not passenger automobiles, and therefore were not listed property under sec. 280F(d)(4). Sec.

Accordingly, we will not allow petitioner any deduction for the transportation of his tools to his worksites.

Petitioner contends that, even if he is not entitled to deduct his commuting expenses, he should still be entitled to deduct his expenses for short errands to pick up materials at building supply stores. Respondent acknowledges that such travel expenses would be deductible but contends that petitioner failed to supply evidence documenting his alleged trips. In his brief, petitioner contends that we may ascertain how many trips he made to building supply stores by examining his debit card purchases and calculating the distances from his worksites to those building supply stores. However, petitioner did not provide sufficient evidence for us to link those trips to particular worksites. Because expenses for listed property and "any

---

280F(d)(5) defines a "passenger automobile" as "any 4-wheeled vehicle * * * manufactured primarily for use on public streets, roads and highways, and * * * rated at 6,000 pounds unloaded gross vehicle weight or less." In the case of a truck or van, the vehicle will be considered a passenger automobile if the gross vehicle weight is 6,000 pounds or less. The record does not contain any evidence regarding the gross vehicle weight of his Ford Explorer and Toyota Tundra, but we note that such vehicles are commonly used passenger automobiles. Moreover, the regulations specifically state that the substantiation requirements of sec. 274(d) "apply generally to any pickup truck or van, unless the truck or van has been specially modified with the result that it is not likely to be used more than a de minimis amount for personal purposes." Sec. 1.274-5T(k)(7), Temporary Income Tax Regs., 50 Fed. Reg. 46035 (Nov. 6, 1985). Petitioner has not contended, and the record does not support a finding, that his pickup truck was so modified.

traveling expense" under section 162 are subject to the strict substantiation requirements of section 274(d), the <u>Cohan</u> doctrine does not apply, and we therefore cannot estimate the amounts of such expenses. Moreover, petitioner was also performing renovation and constructing an addition on his own residence during the years in issue, and it is impossible for us to determine from his debit card transactions whether purchases at building supply stores were for his own residence or for his business. Accordingly, we conclude that petitioner has failed to prove that he is entitled to deduct expenses related to trips from his worksites to building supply stores.

Finally, respondent also acknowledges that petitioner would be entitled to deduct travel expenses between different temporary worksites, but petitioner testified that he typically worked at one worksite for several months at a time before moving on to another worksite. Accordingly, petitioner has failed to show that he made any such trips.

In sum, we hold that petitioner is not entitled to deduct any transportation expenses during the years in issue.

B. <u>Depreciation Expenses</u>

In order to be entitled to a deduction for depreciation with respect to an automobile, a taxpayer must establish that the automobile was used at least partially for business, and the deduction will be allowed only to the extent of business use.

Sec. 167(a); <u>Henry Schwartz Corp. v. Commissioner</u>, 60 T.C. 728, 744 (1973). An automobile is listed property under section 280F(d)(4) and is therefore subject to the strict substantiation requirements of section 274(d) and the regulations thereunder. Those regulations also require strict substantiation with respect to depreciation expenses on listed property. Sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).[12] In order to deduct depreciation on listed property, the taxpayer must strictly substantiate the percentage of business use, and we will not estimate the appropriate allocation using the <u>Cohan</u> rule. See <u>Sowards v. Commissioner</u>, T.C. Memo. 2003-180; <u>Vaksman v. Commissioner</u>, T.C. Memo. 2001-165, affd. 54 Fed. Appx. 592 (5th Cir. 2002); <u>Bishop v. Commissioner</u>, T.C. Memo. 2001-82; <u>Yecheskel v. Commissioner</u>, T.C. Memo. 1997-89, affd. without published opinion 173 F.3d 427 (4th Cir. 1999); <u>Whalley v. Commissioner</u>, T.C. Memo. 1996-533.

As we concluded above, most of petitioner's claimed business use of his automobile was actually for commuting, a nondeductible

---

[12]Sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985), provides:

> For taxable years beginning on or after January 1, 1986, no deduction or credit shall be allowed with respect to * * * listed property * * * unless the taxpayer substantiates each element of the expenditure * * *. This limitation supersedes the doctrine found in <u>Cohan v. Commissioner</u> * * *. For purposes of this section * * * the term "expenditure" means expenses and items (including items such as loss and depreciation).

personal expense.  Petitioner provided no evidence regarding any other use of his vehicle that would satisfy the substantiation requirements of section 274(d).  Accordingly, we hold that he is not entitled to deduct any depreciation on his automobile.[13]

On his 2006 tax return, petitioner claimed a $400 deduction for depreciation of his tools.  However, he did not explain how he determined that he was entitled to such a deduction.  On brief, he contends that $3,200 is a reasonable value for his tools and that he should be entitled to deduct them using straight-line depreciation over 4 years.  Petitioner contends that we should employ the Cohan rule and estimate the amount of depreciation to which he is entitled.

The cost of tools with useful lives greater than a year is recoverable by depreciation.  Secs. 167(a), 168(b); Seawright v.

---

[13]At trial, petitioner attempted to introduce an incomplete, unsigned portion of his 2004 tax return for the purpose of showing that he put his Ford Explorer into service during 2003. We sustained respondent's objection to that exhibit and did not admit it into evidence.  Petitioner argues, in a separate motion, that we erred in refusing to admit that exhibit.  Even if that exhibit were admitted, petitioner would not be allowed to depreciate his Ford Explorer.  Accordingly, we will deem petitioner's motion moot.  Similarly, we will deem moot petitioner's motion to admit a portion of his 2007 tax return, which he contends should be admitted to show that the IRS did not object to deductions he claimed for commuting expenses during 2007.  Whether the IRS examined petitioner's return for his 2007 tax year is irrelevant to our decision in the instant case. Respondent is not estopped from asserting a different position in the years in issue even if he accepted petitioner's treatment of certain items during other years.  See Rose v. Commissioner, 55 T.C. 28, 32 (1970).

<u>Commissioner</u>, 117 T.C. 294, 305 (2001).  Petitioner offered no testimony or other evidence regarding the date on which he purchased the tools.  Since he testified that the records regarding their purchase were destroyed in 2003, we infer that they were purchased some time before then.  Petitioner failed to offer any evidence that the cost of his tools were not already fully depreciated by 2005 and 2006.  Without more evidence, we are unable to estimate the amount of depreciation to which petitioner is entitled.[14]  See <u>Vanicek v. Commissioner</u>, 85 T.C. at 743.

Although he did not claim it on his return, petitioner contends that he should also be allowed to depreciate the cost of the toolshed that he used exclusively to store his tools for work.  However, petitioner produced no evidence to substantiate the amount he spent on the toolshed, nor did he indicate when he purchased it.  He merely guessed what it was worth.  Accordingly, we conclude that petitioner has failed to produce

---

[14]At trial, in order to provide a basis for estimating the value of his tools, petitioner attempted to introduce a price quote on similar tools.  He obtained the price quote from Home Depot during April 2008.  We sustained respondent's objection and did not admit the price quote into evidence.  Petitioner now moves that we reconsider that ruling.  However, even if we were to admit petitioner's price quote, we would still disallow petitioner's claim for depreciation of his tools because he introduced no evidence regarding when he purchased those tools. Accordingly, we will deem petitioner's motion moot.

evidence that would allow him to claim depreciation on the
toolshed.  See <u>id.</u>

    C.   <u>Legal Expenses</u>

A taxpayer is entitled to deduct expenses for legal fees
pursuant to section 162(a) in a suit that "arises in connection
with" the taxpayer's business.  <u>United States v. Gilmore</u>, 372
U.S. 39, 48 (1963); <u>Kornhauser v. United States</u>, 276 U.S. 145,
153 (1928); <u>O'Malley v. Commissioner</u>, 91 T.C. 352, 361-362
(1988).  A taxpayer is even permitted to deduct legal expenses
from a criminal matter, as long as the criminal matter is
sufficiently connected to the taxpayer's business.  See
<u>Commissioner v. Tellier</u>, 383 U.S. 687 (1966).  The deductibility
of legal expenses is determined by looking at the "origin and
character of the claim with respect to which an expense was
incurred".  <u>United States v. Gilmore</u>, <u>supra</u> at 49.

Petitioner's testimony established that his legal expenses
were incurred during several contract disputes, including one
that led to his arrest.  Those disputes arose in connection with
his business as an independent building contractor.  We are
satisfied by petitioner's and Ms. Pannepacker's testimony
regarding the origin and character of those expenses.  We are
also satisfied that, although the canceled checks provided by
petitioner to substantiate the majority of those expenses were
written by Ms. Pannepacker, they were written on a bank account

containing petitioner's funds. However, petitioner's claimed deduction of $800 in legal fees paid during 2003 cannot be deducted on his 2005 return. See Burke v. Commissioner, 32 T.C. 775, 782 (1959) (a cash basis taxpayer's legal fees could be deducted only in the years during which they were actually paid, not in subsequent years), affd. 283 F.2d 487 (9th Cir. 1960); see also Dehoney v. Commissioner, T.C. Memo. 2006-108. Accordingly, we conclude that petitioner is entitled to deduct only the legal fees he has substantiated, i.e., $398 for 2005 and $1,423 for 2006.

D.   Office Expenses

Section 262(a) generally disallows deductions for personal expenses, and section 262(b) provides that the first telephone line of a taxpayer's residence will be treated as a personal expense. Accordingly, we conclude that petitioner is not entitled to deduct the cost of his landline telephone.

Cellular phones[15] and computers are listed items under section 280F(d)(4) and are therefore subject to the heightened substantiation requirements of section 274(d).[16] Petitioner did

---

[15]As noted above, for tax years beginning after Dec. 31, 2009, cellular phones are no longer "listed property" under sec. 280F(d)(4).

[16]Because we have found that no portion of petitioner's residence qualified as his principal place of business under sec. 280A(c)(1), we reject petitioner's argument that his computer qualifies for the exception under 280F(d)(4)(B), which provides

not provide any testimony or other evidence regarding the extent of his business use of his cellular phone or computer. Accordingly, he has not satisfied the strict substantiation requirements under section 274(d), and respondent's disallowance of those expenses will be sustained.

The Court has characterized Internet service provider expenses as utility expenses. Verma v. Commissioner, T.C. Memo. 2001-132. Strict substantiation therefore does not apply, and the Court may estimate a taxpayer's deductible expenses, provided that the Court has a reasonable basis for making an estimate. Vanicek v. Commissioner, supra at 743. Petitioner provided documentation that Ms. Pannepacker spends $33 per month on Internet service, and he testified that he uses the Internet to research parts and tools. However, Ms. Pannepacker also uses the Internet at home, presumably for recreation.

The record before us would establish petitioner's office expense deduction of, at most, $16.50 per month. However, respondent conceded to petitioner in the notice of deficiency a deduction of $50 per month for office expenses. Accordingly, we sustain respondent's determination that petitioner is entitled to

---

that computers used at a regular business establishment are not listed property. Sec. 280F(d)(4)(B) provides that any portion of a dwelling unit will qualify as a "regular business establishment" only if that portion of the dwelling satisfies the requirements of sec. 280A(c)(1).

deduct only $600 per year for office expenses, not the $1,200 per year he claimed on his returns.

E.    Other Expenses

As part of petitioner's claimed "Other Expenses" on his 2005 Schedule C, he included a $1,000 expense related to a settlement with Builder's Prime Window (Builder's Prime).  At some point, Builder's Prime billed Ms. Pannepacker approximately $2,500 for windows that petitioner and Ms. Pannepacker testified she never purchased.  Petitioner testified that the bill was related to some work he was doing as general contractor, but that the accounting department at Builder's Prime had made an error and billed him for windows he did not order.  Because petitioner used a bank account in Ms. Pannepacker's name to conduct his business, the bill from Builder's Prime was actually addressed to Ms. Pannepacker, who has never bought anything from Builder's Prime. In addition to petitioner's testimony and that of Ms. Pannepacker, petitioner also provided copies of correspondence with Builder's Prime regarding the dispute, a canceled check payable to Builder's Prime with a note about settlement on the memo line, and a settlement agreement signed by petitioner, Ms. Pannepacker, and the president of Builder's Prime.  The settlement agreement also refers to the bills from another project that petitioner explained were the source of the dispute. Petitioner testified that he never received reimbursement for

that settlement expense from Mr. Mancino, and he also submitted a statement from Mr. Mancino, included among the stipulated exhibits, in which Mr. Mancino stated that he did not reimburse petitioner for that amount.

We are persuaded by petitioner's evidence that the $1,000 paid to Builder's Prime was a settlement payment that arose from petitioner's contracting business and that he was never reimbursed for that payment. Accordingly, we conclude that it is a deductible business expense for 2005.

Petitioner contends that he is entitled to deduct $2,200 on his 2006 tax return for books he purchased between 2001 and 2005. He contends that he did not deduct those expenses during prior years because he did not begin writing seriously until 2006. The books purchased by petitioner consist almost entirely of popular books that most purchasers would read for pleasure. The record is unclear as to whether, at the time petitioner made the purchases, he intended to use the books as research material for books he intended to write in the future. Indeed, it is unclear from the record whether petitioner had even conceived of the idea of writing a book series when he began to purchase the books during 2001. In any case, because petitioner paid for the books in prior years, he is not entitled to deduct them on his 2006 return. See A. Finkenberg's Sons, Inc. v. Commissioner, 17 T.C. 973, 982-983 (1951) ("Expenses incurred and paid in prior years

are not deductible in later years though incidental to earnings in later years").

III. <u>Whether Petitioner Is Liable for Accuracy-Related Penalties</u>

Section 6662(a) imposes an accuracy-related penalty of 20 percent of any underpayment that is attributable to causes specified in subsection (b). Subsection (b) applies the penalty to any underpayment attributable to, inter alia, a "substantial understatement" of income tax, meaning that the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return for the tax year or $5,000. Sec. 6662(d)(1)(A).

Generally, the Commissioner bears the burden of production with respect to any penalty, including the accuracy-related penalty. Sec. 7491(c); <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446 (2001). To meet that burden, the Commissioner must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty. <u>Higbee v. Commissioner</u>, <u>supra</u> at 446. However, once the Commissioner has met the burden of production, the burden of proof remains with the taxpayer, including the burden of proving that the penalties are inappropriate because of substantial authority or reasonable cause under section 6664. See Rule 142(a); <u>Higbee v. Commissioner</u>, <u>supra</u> at 446-447.

Respondent determined that petitioner was liable for the penalty under section 6662(a) because he substantially understated his income tax for both of the years in issue. Section 6662(a) and (b)(2) imposes a 20-percent accuracy-related penalty on any portion of a tax underpayment that is attributable to any substantial understatement of income tax, defined in section 6662(d)(1)(A) as an understatement that exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. The exact amount of petitioner's understatement will depend upon the Rule 155 computations, which we order below. To the extent that those computations establish that petitioner has a substantial understatement of income tax, respondent has met his burden of production. See Prince v. Commissioner, T.C. Memo. 2003-247.

The amount of an understatement on which the penalty is imposed will be reduced by the portion of the understatement that is attributable to the tax treatment of an item (1) that was supported by "substantial authority" or (2) for which the relevant facts were "adequately disclosed in the return or in a statement attached to the return". Sec. 6662(d)(2)(B). Additionally, no penalty will be imposed with respect to any portion of an underpayment if it is shown that there was reasonable cause for such portion and the taxpayer acted in good faith with respect to such portion. See sec. 6664(c)(1).

Petitioner has failed to show that he had substantial authority or acted with reasonable cause and in good faith with respect to any portion of his underpayment.  Accordingly, we hold that he is liable for the section 6662(a) penalty insofar as the Rule 155 computations show a substantial understatement of income tax.

In reaching the foregoing holdings, we have considered all the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.