T.C. Memo. 2012-272

UNITED STATES TAX COURT

MARILYN EILEEN NOZ AND GERALD QUENTIN MAGUIRE, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4993-10.                                  Filed September 24, 2012.

<u>Mikhail Hitune</u>, <u>Collin Glidewell</u>, <u>Frank Agostino</u>, and <u>Reuben Muller</u>, for
petitioners.

<u>Eliezer Klein</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, <u>Judge</u>:  On December 4, 2009, the respondent (the "IRS")

issued the petitioners Marilyn Eileen Noz and Gerald Quentin Maguire, Jr. (the

"petitioners") a notice of deficiency for tax year 2006.  The notice disallowed

[*2] $31,228 in miscellaneous itemized deductions, comprising $31,070 in unreimbursed employee expense deductions and $158 in other deductions. The notice determined that the petitioners were liable for an income-tax deficiency of $8,311 and a section 6662(a)[1] accuracy-related penalty of $1,662.20. After concessions, the issues for decision are: (1) whether the petitioners are entitled to a $29,202.87 deduction for unreimbursed employee expenses;[2] (2) whether deductions for Maguire's unreimbursed employee expenses--to the extent that they are otherwise allowed--must be reduced because they are allocable to income that was reported as excluded under section 911(a)(1); and (3) whether the petitioners are liable for a section 6662(a) accuracy-related penalty.

The petitioners timely filed a petition disputing the IRS's determinations. We have jurisdiction, pursuant to section 6214, to redetermine the deficiency and the penalty determined in the notice of deficiency. See sec. 6214(a).

---

[1]All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[2]The IRS has conceded $1,867.13 as a deduction for unreimbursed employee expenses and $158 as a miscellaneous itemized deduction for other expenses.

[*3]                              FINDINGS OF FACT

The parties have stipulated some facts, and they are so found.

During the year in issue, petitioner Marilyn E. Noz ("Noz") resided in Jackson Heights, New York, and petitioner Gerald Q. Maguire, Jr. ("Maguire") resided in Stockholm, Sweden. At all relevant times, the petitioners were husband and wife.

The petitioners, both university professors, have been research collaborators for the last several decades. Since the 1970s, the petitioners have jointly published numerous books, chapters, and articles. Sometimes they were the only authors; sometimes they had coauthors. In 1983, while both petitioners were employed as professors at educational institutions in New York, they made a trip to Sweden. There, they began a collaboration with Sweden-based researchers that continued after the petitioners returned to New York. In 1994, Maguire accepted a full-time professorship in Sweden. At that time, he moved to Stockholm but continued to work with Noz and other colleagues in the United States. Noz remained in the United States and continued to collaborate with Maguire and other researchers in Sweden.

During tax year 2006, the petitioners were both employed as university professors. Maguire taught computer communications at the Royal Institute of

[*4] Technology in Stockholm, Sweden. He was expected to teach classes, supervise student theses, and conduct and publish his own research. He is still a professor at the Royal Institute of Technology.

From 1974 until her retirement from active teaching in 2009--a timespan that includes the year in issue in this case (2006)--Noz was a professor of radiology at New York University School of Medicine ("NYU") in New York, New York. Her duties at NYU included teaching, supervising student research, and overseeing the computer system at a 24-hour medical clinic. Like her husband, she was expected to conduct and publish original research.

During 2006, the petitioners published one jointly-authored article, "Enhancing the Utility of ProstaScint SPECT Scans for Patient Management", which they coauthored with Grace Chung, Benjamin Y. Lee, J. Keith DeWyngaert, Jay V. Doshi, Elissa L. Kramer, Antoinette D. Murphy-Wolcott, Michael P. Zeleznik, and Noeun G. Kwak. In 2007, they published two jointly-authored articles: "Prone MammoPET Acquisition Improves the Ability to Fuse MRI and PET Breast Scans", which they coauthored with Linda Moy, Fabio Ponzo, Abby E. Deans, Antoinette D. Murphy-Wolcott, and Elissa L. Kramer; and "Improving Specificity of Breast MRI Using Prone PET and Fused MRI and PET 3D Volume Datasets", which they coauthored with Linda Moy, Fabio Ponzo, Antoinette D.

[*5] Murphy-Wolcott, Abby E. Deans, Mary T. Kitazono, Laura Travascio, and Elissa L. Kramer.

Expenses Attributable to Maguire

Our determinations and findings of fact regarding the expenses of both petitioners are affected by a supplement to the stipulation of facts. The supplemental stipulation and the original stipulation were executed by the parties on the day of trial. The supplemental stipulation states: "Petitioners provided proof that the expenses herein dispute were paid." As discussed more extensively infra pp. 16-19, the supplemental stipulation means that an expense was paid by the petitioners if the expense is considered within the class of "expenses herein dispute". The supplemental stipulation does not resolve other questions about the expenses, such as their purpose.

In 2006, Maguire made eight trips from Stockholm to New York City. Maguire's flights between Stockholm and New York were all roundtrip flights, originating from and returning to New York.[3] The record contains the dates and ticket costs for six of the eight trips:

---

[3]The petitioners did not offer any explanation as to why Maguire's flights originated in New York, rather than Stockholm, where he resided.

| [*6] Flight departed from New York City | Return flight departed from Stockholm | Cost of ticket |
|---|---|---|
| Jan. 13, 2006 | Feb. 4, 2006 | $1,767.96 |
| Feb. 12, 2006 | Apr. 7, 2006 | 1,767.96 |
| June 18, 2006 | July 31, 2006 | 1,155.49 |
| Aug. 8, 2006 | Oct. 6, 2006 | 1,892.00 |
| Oct. 16, 2006 | Nov. 9, 2006 | 1,863.35 |
| Nov. 15, 2006 | Dec. 9, 2006 | 1,884.97 |
| Total | | 10,331.73 |

There is insufficient information in the record for us to determine the dates of Maguire's two other flights or the costs of those tickets.

While in New York, Maguire stayed with his wife at their jointly owned apartment in Jackson Heights. During his time in New York, Maguire worked most days, usually taking one day off per week for personal activities. He divided his work time between (1) the collaborative research he was conducting with Noz and (2) work related to Royal-Institute-of-Technology projects that did not need to be conducted in New York. There is no evidence as to how Maguire allocated his work time between these two categories.

In addition to the trips between Sweden and the United States, Maguire traveled to Chicago to attend the "Motorola Visionary" board meeting and to Los

[*7] Angeles to do a "site visit" for the National Science Foundation.  The record suggests that he traveled to both destinations from Sweden via New York.  We are unable to determine from the record when his trips to Chicago and Los Angeles took place, the duration of the trips, or the cost of travel to those destinations.  In the course of these two trips, he incurred some meal expenses of indeterminate amounts.

During 2006, Maguire also incurred expenses of $730.12 for internet service at his apartment in Stockholm.  The parties separately stipulated the amount of Maguire's internet expenses.  Maguire used his home internet service to correspond with Noz regarding their joint academic research.  Maguire's employer, the Royal Institute of Technology, did not require him to have internet access in his home.

During 2006, the petitioners collectively incurred $7,652.82 in expenses for the purchase of computers and computer-related equipment, including a cellular phone.  This fact is established by the supplemental stipulation, considered in tandem with a statement in the IRS's brief.[4]  The supplemental stipulation does not

---

[4]In n. 2 of the IRS's opening brief, the IRS states that the petitioners claimed as a deduction $7,652.82 in expenses for the purchase of computers and computer-related equipment.  (In context, the IRS's references to computers and computer-related equipment included a cellular telephone.)  In light of the statement in n. 2 of the IRS's opening brief, the $7,652.82 in expenses are "expenses herein dispute" as that term is used in the supplemental stipulation.  See infra pp. 17-18.  Therefore,

(continued...)

**[\*8]** resolve which of the petitioners incurred which of the $7,652.82 in expenses, what items in particular were purchased, the cost of any particular item, or the purpose of any of the purchases.

An April 15, 2009 letter from the petitioners to the IRS (entered into evidence as Exhibit 3-J) states that the petitioners made the following purchases during 2006: Adobe Acrobat Professional software; a laptop computer; LCD flat-panel monitors; headphones and a mouse; switches; cameras and audio headsets; tools and safety equipment for repairing circuit boards; a Nokia E70 cellular phone; a networking router; gigabit switches and ethernet cards; a USB portable memory stick; and cables and other equipment for facilitating computer presentations. The letter describes the items and how the items were used in conjunction with the petitioners' employment.[5] On the basis of the letter, the purchases of the above items were related to the petitioners' business. The petitioners also incurred an expense of an indeterminate amount in purchasing the items listed in the April 15, 2009 letter. This finding is supported by the record, i.e. the letter, and by the

---

[4](...continued)
through the effect of the supplemental stipulation, the petitioners are deemed to have "paid" $7,652.82 for the purchase of computers and computer-related equipment (including a cellular phone).

[5]For example, the letter states that the "Adobe Acrobat Professional software * * * was used for preparing comments on manuscripts".

**[*9]** supplemental stipulation. However, neither the letter nor the supplemental stipulation reveals: (1) which items were purchased by Maguire and which items were purchased by Noz (aside from the cellular phone, which the record establishes was purchased by Maguire), (2) the cost of any of these items, (3) the total cost of all of these items, or (4) when any item was purchased.

Maguire did not request or receive reimbursement from the Royal Institute of Technology for any of the expenses described in this part of the opinion, i.e. "Expenses Attributable to Maguire". This is because the Royal Institute of Technology did not allocate any part of its budget to Maguire's research expenses.

For his work at the Royal Institute of Technology in 2006, Maguire was paid an annual salary of $104,215.[6] On their 2006 income-tax return, the petitioners reported that $82,400 of Maguire's salary was excluded pursuant to section 911(a)(1), which allows a U.S. citizen residing abroad to elect to exclude up to $82,400 of foreign-earned income. See sec. 911(a)(1), (b)(2)(D). The $82,400 reported as excluded pursuant to section 911(a)(1) was approximately 79% of the $104,215 salary Maguire received from the Royal Institute of Technology in 2006. In determining their 2006 U.S. income-tax liability, the petitioners did not reduce

---

[6]Maguire was paid in Swedish kronor. He received 714,394 kronor, which, converted to U.S. dollars, is $104,215.

[*10] the amount of their unreimbursed employee expense deductions to account for expenses allocable to the portion of Maguire's salary that they reported was excluded from gross income pursuant to section 911(a)(1).

Expenses Attributable to Noz

Noz made five trips to Sweden in 2006, each lasting between 14 and 32 days. Noz's flights between New York and Stockholm were all roundtrip flights, originating from and returning to New York. The dates of Noz's five New York-Stockholm trips are as follows:

| Flight departs from New York | Return flight departs from Stockholm | Cost of ticket |
|---|---|---|
| Mar. 10, 2006 | Mar. 27, 2006 | $591.88 |
| June 30, 2006 | July 31, 2006 | 1,155.49 |
| Aug. 29, 2006 | Sept. 11, 2006 | 715.64 |
| Oct. 16, 2006 | Oct. 30, 2006 | 735.61 |
| Nov. 15, 2006 | Dec. 4, 2006 | 635.61 |
| Total | | 3,834.23 |

While in Stockholm, Noz stayed with Maguire at their jointly owned apartment. During her trips to Sweden, Noz generally worked eight or nine hours per day, five or six days per week. She divided this work time between (1) her collaboration with Maguire and other Swedish researchers and (2) work related to

**[*11]** her responsibilities at NYU that did not need to be conducted in Sweden. There is no evidence as to how Noz allocated her work time between these two categories. Noz also engaged in some personal activities. She was not reimbursed by NYU for her travel to Sweden.

During 2006, Noz attended two professional conferences, one in San Diego, California, and another in Utrecht, the Netherlands. The record does not reveal the dates of these trips, their cost, or whether Noz incurred meal expenses during this travel.[7] The record suggests that Noz's travel to Utrecht originated in Sweden but does not reveal where her travel to San Diego originated. NYU reimbursed Noz for $4,000 of travel expenses. This $4,000 amount covered the cost of her trip to San Diego and a portion of the cost of her trip to Utrecht.

Also during 2006, Noz incurred $2,026.93 in costs for internet service at her residence in New York. The parties separately stipulated the amount of Noz's internet expense. She used the internet to correspond with Maguire regarding their research collaboration and to monitor the computer system at a 24-hour medical clinic. NYU did not require Noz to have home internet service, and she was not reimbursed by the university for her internet expenses.

---

[7]The petitioners' reply brief suggests that the overall cost of Noz's Utrecht trip might have included some meal expenses, but we are unable to verify this using the information in the record.

**[*12]** Finally, as Noz testified, during 2006 she purchased "electronics equipment" for use by her students. As discussed infra p. 34, computers, computer-related equipment, and cellular telephones are "listed property". See secs. 274(d)(4), 280F(d)(4)(A)(iv) and (v). In order to deduct expenses for listed property, a taxpayer must satisfy strict substantiation requirements. Sec. 274(d)(4). Had the petitioners proven that Noz purchased equipment that was not listed property, this would be significant because the test for deducting nonlisted property is more permissive than the test for deducting listed property. However, we do not consider Noz to have purchased equipment other than listed property. Her testimony conspicuously lacked any detail regarding the types of "electronics equipment" she purchased or the cost of that equipment. Furthermore, the petitioners never argued that the equipment they purchased was nonlisted property. On the basis of Noz's testimony, we find that Noz incurred costs of indeterminate amounts for the purchase of items that are listed property.

The Petitioners' 2006 Income-Tax Return

The petitioners timely filed their 2006 joint income-tax return. In preparing their return, the petitioners consulted IRS Publications 17, Your Federal Income Tax For Individuals, and 529, Miscellaneous Deductions, in particular the portions

[*13] concerning research expenses of a college professor.  They did not seek professional tax advice or tax preparation services.

On Schedule A, Itemized Deductions, of their return, the petitioners claimed as a deduction $31,070 in "[u]nreimbursed employee expenses" and $158 in "[o]ther expenses".[8]  On a Form 2106, Employee Business Expenses, which they attached to their return, the petitioners reported that their total $31,070 unreimbursed employee expense deduction comprised deductions for expenses in the following categories: $18,543 for travel; $250 for meals; and $12,277 for "[b]usiness expenses" not related to travel, meals, or entertainment.  The return does not state what particular expenses are included in each of these three general expense categories.

As will be explained later in the opinion, during 2006, the petitioners incurred the following expenses that could potentially be characterized as travel expenses:  (1) the cost of 13 flights between New York and Stockholm, (2) the cost of Maguire's travel to Chicago, (3) the cost of Maguire's travel to Los Angeles, and (4) the cost of Noz's travel to Utrecht (to the extent she was not reimbursed by NYU).  The petitioners provided documentation for 11 flights between New York

---

[8]A notation on the petitioners' return describes the $158 item as expenses for "Merrill Lynch" and "Safety [sic] deposit box".

**[*14]** and Stockholm (all five of Noz's flights and six of Maguire's eight flights), the total cost of which was $14,165.96. This $14,165.96 amount could account for a portion of the total $18,543 the petitioners claimed as a deduction for travel expenses. The remaining $4,377.04 conceivably comprises the cost of two of Maguire's New York-Stockholm flights (for which no documentation was provided), the cost of Maguire's travel to Chicago, the cost of Maguire's travel to Los Angeles, and that portion of Noz's costs for travel to Utrecht for which she was not reimbursed by NYU.

The $250 deduction the petitioners claimed for meal expenses corresponds to $499 in expenses they claimed they incurred for meals consumed while traveling away from home.[9]

As for the $12,277 in expenses not related to travel, meals, or entertainment, the IRS concedes in its brief that the $12,277 total comprised deductions the petitioners claimed for expenses in the following categories: $1,153 for professional dues and subscriptions; $89.34 for shipping charges; $624.79 for book

---

[9]A taxpayer may claim as a deduction only 50% of meal expenses incurred. See sec. 274(n)(1)(A).

**[*15]** purchases; $2,757.05 for home internet service; and $7,652.82 for the purchase of computers and computer-related equipment, including a cellular phone.[10]

On December 4, 2009, the IRS issued the petitioners the statutory notice of deficiency, disallowing $31,228 in miscellaneous itemized deductions. This figure comprises $31,070 in deductions for unreimbursed employee expenses and $158 in deductions for "[o]ther expenses". The IRS determined that, as a result of the disallowed deductions, the petitioners were liable for a deficiency in tax of $8,311. The IRS also determined that the petitioners were liable for a section 6662(a) accuracy-related penalty of $1,662.20.

On February 25, 2010, the petitioners timely filed a petition with the Tax Court, disputing the determinations of the IRS.

---

[10]The statement described in the text is that the $12,277 deduction the petitioners claimed consisted of the five specific subclaims described in the text. This statement, as we interpret it, is merely an acknowledgment that the petitioners claimed a deduction for these amounts and is not a concession that these amounts are allowable as deductions. As described infra pp. 19-20, the IRS concedes (in a separate passage in its brief) that the petitioners are entitled to deduct professional dues and subscriptions, shipping charges, and book purchase expenses but not home internet expenses or expenses incurred for the purchase of computers, computer-related equipment, or a cellular phone.

[*16] <u>Supplemental Stipulation of Facts</u>

A trial was held in New York City on February 7, 2011. On that day, the parties filed a stipulation of facts. We incorporate these stipulated facts in our findings of fact. On the day of trial, the parties also filed a supplement to the stipulation of facts. As noted previously, the supplemental stipulation states as follows: "Petitioners provided proof that the expenses herein dispute were paid." The term "expenses herein dispute" is ambiguous. It is also unclear what evidence was included in the "proof" petitioners "provided" and what legal significance should be accorded the parties' agreement that there is "proof" that the disputed expenses were paid. Neither party's brief offers a position on those questions.

We cannot resolve the issues in this case without resolving the ambiguities in the supplemental stipulation. Resolving these ambiguities, we construe the supplemental stipulation as follows:

- During 2006, the petitioners incurred $18,543 in expenses for travel. We consider the $18,543 in travel expenses to be "expenses herein dispute" because that is the amount of the deduction for travel expenses the petitioners claimed on their return and because the IRS disputes the petitioners' entitlement to a deduction for such expenses. The nature of the travel is unresolved by the supplemental stipulation,

[*17] except that $14,165.96 is attributable to 11 specific flights between New York and Stockholm (6 flights by Maguire, 5 flights by Noz), documentation of which is found in the stipulated exhibits.

- During 2006, the petitioners incurred $499 in expenses for meals consumed away from home. We consider the $499 in meal expenses to be "expenses herein dispute" because it is the amount of meal expenses the petitioners reported on their return[11] and because the IRS disputes the petitioners' entitlement to a deduction for such expenses.

- During 2006, the petitioners incurred $2,757.05 in expenses for home internet service. We consider the $2,757.05 in home internet expenses to be "expenses herein dispute" because the parties stipulated that the petitioners claimed that amount as a deduction for home internet expenses on their return and because the IRS disputes the petitioners' entitlement to a deduction for such expenses.

- During 2006, the petitioners incurred $7,652.82 in expenses for the purchase of computers, computer-related equipment, and a cellular phone. We consider the $7,652.82 amount to be an "expense herein

___

[11]The amount of the deduction attributable to those meal expenses was reduced, pursuant to sec. 274(n)(1)(A), to $250.

[*18] dispute" because the IRS stated in its brief that the petitioners claimed that amount as a deduction for computers and computer-related equipment (including a cellular phone) on their return and because the IRS disputes the petitioners' entitlement to a deduction for such expenses.

- During 2006, the petitioners incurred an expense of indeterminate amount for the purchase of the computer, computer-related equipment, and cellular phone[12] discussed in the April 15, 2009 letter. We consider the indeterminate cost of this equipment to be an "expense herein dispute" because the items described in the letter are all listed property and the IRS disputes the petitioners' entitlement to a deduction for such expenses.

- During 2006, Noz incurred an expense of indeterminate amount for the purchase of "electronics equipment". We consider the

---

[12]The April 15, 2009 letter does not describe the items listed in the letter as "computers, computer-related equipment, and cellular phones." This is our own term for these items. Therefore, the fact that the IRS's brief used the same phrase in describing the $7,652.82 in expenses that the petitioners deducted on their tax return is not intended to suggest that the petitioners deducted all of the items described in the April 15, 2009 letter on their return, or that the April 15, 2009 letter is an exhaustive description of all of the items included in the petitioners' $7,652.82 deduction for computers, computer-related equipment, and cellular phones.

[*19] indeterminate cost of this equipment to be an "expense herein dispute" because we found that the "electronics equipment" expenses are listed property expenses and the IRS disputes the petitioners' entitlement to a deduction for such expenses.

Neither party argues that the supplemental stipulation represents a concession by the IRS that the petitioners were entitled, under section 162, to any deductions or that they substantiated their deductions in accordance with the requirements of section 274.[13]  We do not construe the supplemental stipulation as such a concession.

OPINION

I.     Deficiencies in Tax

In its notice of deficiency, the IRS disallowed $31,228 in miscellaneous itemized deductions the petitioners claimed on Schedule A of their 2006 income-tax return, which comprised $31,070 in deductions for unreimbursed employee expenses and $158 in other miscellaneous itemized deductions.  After issuing the notice, the IRS conceded that the petitioners were entitled to deduct the following

---

[13] Indeed, the parties had initially stipulated that petitioners had provided "substantiation" that the disputed expenses had been paid; the parties then mutually agreed to withdraw that initial stipulation because they did not intend to stipulate that the petitioners had satisfied the strict substantiation requirements of sec. 274.

[*20] amounts:  $1,153 in professional dues and subscriptions; $89.34 in shipping charges; $624.79 in book purchases; and $158 in other miscellaneous itemized deductions.  However, the IRS asserts that the petitioners are not entitled to deduct as unreimbursed employee expenses $18,543 for travel; $250 for meals; $2,757.05 for home internet service; and $7,652.82 for the purchase of computers, computer-related equipment, and a cellular phone.  The IRS further asserts that, to the extent any of the disputed deductions attributable to Maguire are otherwise permissible, the petitioners are prohibited by section 911(d)(6) from deducting amounts allocable to the portion of Maguire's salary excluded from gross income under section 911(a)(1).  We address each of these arguments in turn.

    A.    <u>Burden of Proof</u>

In deficiency proceedings before the Tax Court, the burden of proof generally rests with the taxpayer.  Rule 142(a)(1).  Section 7491 shifts the burden of proof to the IRS with respect to a given factual issue where a taxpayer (1) introduces credible evidence with respect to that issue, (2) meets all applicable substantiation requirements, (3) complies with all record-keeping requirements, and (4) cooperates with any reasonable requests for information.  Sec. 7491(a); <u>Higbee v. Commissioner</u>, 116 T.C. 438, 440-441 (2001).  However, because our conclusions are based on the preponderance of the evidence, allocation of the

[*21] burden of proof is immaterial here.  See Martin Ice Cream Co. v. Commissioner, 110 T.C. 189, 210 n.16 (1998).

B.      Unreimbursed Employee Expenses

Section 162 allows a taxpayer to deduct all ordinary and necessary expenses incurred by the taxpayer in carrying on a trade or business.  Sec. 162(a).  An expense is "ordinary" if it is "normal, usual, or customary" in the taxpayer's trade or business.  See Deputy v. du Pont, 308 U.S. 488, 495 (1940).  An expense is "necessary" if it is "appropriate and helpful" in the taxpayer's business, but it need not be absolutely essential.  Commissioner v. Tellier, 383 U.S. 687, 689 (1966) (citing Welch v. Helvering, 290 U.S. 111, 113 (1933)).  Whether an expense is deductible pursuant to section 162 is a question of fact to be decided on the basis of all the relevant facts and circumstances.  Cloud v. Commissioner, 97 T.C. 613, 618 (1991) (citing Commissioner v. Heininger, 320 U.S. 467, 473-475 (1943)).

A trade or business includes performing services as an employee, and, thus, an employee may deduct expenses that are ordinary and necessary to his or her employment.  See Lucas v. Commissioner, 79 T.C. 1, 6 (1982).  Generally, expenses incurred by a university professor to engage in the teaching and research expected of the professor by the university are ordinary and necessary expenses.  See Keating v. Commissioner, T.C. Memo. 1995-101, 1995 WL 103411, at *6

**[*22]** (citing Rev. Rul. 63-275, 1963-2 C.B. 85).  However, an employee expense is not ordinary and necessary if the taxpayer is entitled to reimbursement from his or her employer.  See Podems v. Commissioner, 24 T.C. 21, 22-23 (1955).

As explained below, we hold that of the $29,202.87 of unreimbursed employee expenses in dispute, the allowable deduction is zero.

### 1. Home Internet Expenses

The parties stipulated that, during 2006, the petitioners paid $2,026.93 for home internet service at Noz's residence in New York and $730.12 for home internet service at Maguire's residence in Stockholm.  The parties further stipulated that the petitioners claimed the sum of these two amounts, $2,757.05, as a deduction on their 2006 income-tax return.  The IRS contends that this amount is not deductible because the petitioners have not proven it is allowable under section 162 or, in the alternative, because they have failed to substantiate the deduction pursuant to section 274.  See secs. 274(d)(4) (imposing strict substantiation requirements on deductions for "listed property", which includes computers and computer-related peripheral equipment), 280F(d)(4)(A)(iv).

A taxpayer may deduct the cost of home internet service pursuant to section 162 if the expense is ordinary and necessary in the taxpayer's trade or business.  See Fessey v. Commissioner, T.C. Memo. 2010-191, slip op. at 13.  To the extent

[*23] that the taxpayer's home internet expense is attributable to nonbusiness use, it constitutes a nondeductible personal expense. See sec. 262(a); Fessey v. Commissioner, slip op. at 13. Contrary to the contention of the IRS, home internet expenses are not subject to the strict substantiation rules of section 274(d). See Bogue v. Commissioner, T.C. Memo. 2011-164, slip op. at 41 (strict substantiation does not apply to utility expenses, such as home internet service); Alami v. Commissioner, T.C. Memo. 2009-42, slip op. at 26 (same).

Under the Cohan rule, if a taxpayer establishes that a deductible expense has been incurred but cannot establish the precise amount of the deductible expense, the Court should estimate the amount. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). In making the estimate, the Court bears heavily against the taxpayer who failed to more precisely substantiate the deduction. See id. at 544. The Court will not estimate a deductible expense unless the taxpayer presents a sufficient evidentiary basis upon which an estimate can be made. See Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

The petitioners conduct academic research in collaboration with each other and other colleagues in other parts of the world. They both testified credibly that home internet service was used in such collaborations. Furthermore, the petitioners were not reimbursed by their employers for the costs of home internet service, nor

**[\*24]** were they entitled to reimbursement for such costs. Therefore, the petitioners have demonstrated that they incurred a deductible expense, i.e. the portion of the home internet charges attributable to business use. However, the petitioners provided no evidence, testimonial or otherwise, regarding the percentage of internet use that was devoted to business purposes and the percentage of internet use that was devoted to personal purposes. Any estimate we might make regarding the deductible portion of the expense would be wholly arbitrary. Because we are unable to estimate the portion of internet use devoted to business purposes, we hold that the petitioners are not entitled to a deduction for any of the costs incurred for home internet service during 2006. See Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957) (absent some evidence that the estimated amount was incurred for a deductible purpose, allowing the deduction would constitute "unguided largesse").

### 2. Travel Expenses

A taxpayer may claim a deduction for travel expenses if such expenses are reasonable, necessary, and directly attributable to the taxpayer's business. Sec. 162(a)(2); sec. 1.162-2(a), Income Tax Regs. If the trip is undertaken for both business and personal reasons, travel expenses are deductible only if the primary purpose of the trip is business. See sec. 1.162-2(b)(1), Income Tax Regs. Whether

[*25] the primary purpose of the trip is business or personal depends on all the facts and circumstances, in particular, the amount of time during the trip that the taxpayer devoted to business and personal activities.  Sec. 1.162-2(b)(2), Income Tax Regs.

In addition to the requirements of section 162, section 274(d) provides that expenses attributable to travel (including meals while traveling) and certain property (referred to as "listed property") are not deductible unless the taxpayer "substantiates" (1) the amount of the expense, (2) the time and place of the travel or use of the property, and (3) the business purpose of the expenditure.

Generally, where a taxpayer can show that he or she incurred a deductible expense but cannot substantiate the precise amount, the Court should approximate the amount of the expense on the basis of the facts available in the record.  Cohan v. Commissioner, 39 F.2d at 543-544.  However, section 274 supersedes this rule. Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), aff'd, 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  "Section 274(d) contemplates that no deduction or credit shall be allowed a taxpayer on the basis of such approximations or unsupported testimony of the taxpayer."  Sec. 1.274-5T(a), Temporary Income Tax Regs., supra.

[*26] On their 2006 income-tax return, the petitioners claimed as a deduction $18,543 in travel expenses. It is unclear from the face of the return what items were included in the $18,543 amount. The petitioners assert they are entitled to deduct costs attributable to the following as travel expenses: (1) 13 roundtrip flights between New York and Stockholm, (2) Maguire's travel to Chicago, (3) Maguire's travel to Los Angeles, and (4) Noz's travel to Utrecht (to the extent she was not reimbursed by NYU). The IRS asserts the petitioners' travel expense deductions are not ordinary and necessary business expenses under section 162 and were not substantiated in accordance with section 274(d). We will first address flight expenses for the petitioners' travel between New York and Stockholm and then address the other travel expenses.

a.    Expenses for Flights Between New York and Stockholm

The petitioners' travel between Sweden and New York was motivated by both business and personal concerns. We must therefore determine whether the primary motive for this travel was business or personal. See sec. 1.162-2(b)(1), Income Tax Regs. We find that the primary motive for the travel was personal.

First, the fact that the petitioners are husband and wife strongly suggests a personal motive. Collectively, the petitioners made 13 trips to each other's respective city of residence during 2006. During these trips, the petitioners stayed

[*27] at their jointly owned apartments in New York and Stockholm. The duration of the trips allowed the petitioners to spend a significant portion of the year together, despite living in separate countries.[14]

Second, while abroad, the petitioners did not work solely on their research collaboration, which required foreign travel. Some of their work time while traveling was devoted to work activities unrelated to their research collaboration that did not necessitate overseas travel.

Third, the petitioners did not offer any evidence, testimonial or otherwise, as to how they allocated their time between activities related to their research collaboration and other work activities.

Fourth, neither petitioner offered any details concerning the nature of their research collaboration, the collaborative activities undertaken, their research objectives, or how the travel expenses contributed to the accomplishment of these research objectives. Both petitioners testified that their travel allowed them to collaborate with each other and researchers at other institutions, but they did not identify a single one of the other researchers by name, nor did they identify a single meeting with another researcher that took place during any of their trips. The

---

[14]Because we cannot ascertain from the record the dates of all of Maguire's flights, we cannot calculate exactly what portion of the year the petitioners spent in the same country.

**[\*28]** petitioners have offered almost no evidence as to what they did during their trips abroad or how these trips facilitated the achievement of professional objectives. Thus, it is difficult for us to conclude that the work requiring foreign travel predominated over the work that did not require foreign travel.

On the basis of the frequency of travel, the personal relationship between the petitioners, and the petitioners' failure to offer any evidence, beyond broad generalities, of how the trips advanced any stated business purpose, we find that the New York-Stockholm trips were motivated primarily by personal concerns. The petitioners are therefore not entitled to deduct the costs of their flights between New York and Stockholm.

Because the petitioners' New York-Stockholm flight expenses are not deductible pursuant to section 162, we need not address whether these expenses were properly substantiated for the purposes of section 274(d).

> b.     <u>Expenses for Maguire's Trips to Chicago and Los Angeles and Noz's Trip to Utrecht</u>

Regulations issued pursuant to section 274(d) provide that no deduction is allowed for travel expenses unless the taxpayer "substantiates" the following elements: (1) the amount of each separate travel expense; (2) the dates of departure and return; (3) the destination of travel; and (4) the business purpose for the travel.

[*29] Sec. 1.274-5T(b)(1) and (2), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Even if a travel expense meets the requirements of section 162, it is not deductible unless the above requirements are satisfied. See sec. 274(d)(1).

An element is substantiated for the purposes of section 274 by either "adequate records" or "sufficient evidence". Sec. 274(d). To substantiate expenses by "adequate records", the taxpayer must maintain and produce some combination of records or other documentary evidence that, cumulatively, establishes each element of the expense or use. See sec. 1.274-5T(c)(1), (2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46016, 46017 (Nov. 6, 1985). A taxpayer who is unable to comply with the "adequate records" requirements must instead establish each element of the expense or use by "sufficient evidence". Sec. 1.274-5T(c)(3), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985). This requires that the taxpayer establish each element by "his own statement, whether written or oral, containing specific information in detail as to such element" and by "other corroborative evidence sufficient to establish such element." Sec. 1.274-5T(c)(3)(i), Temporary Income Tax Regs., supra. While corroborating evidence need not be written, it must establish each element of the expenditure with

[*30] "precision and particularity." Hughes v. Commissioner, 451 F.2d 975, 979 (2d Cir. 1971), aff'g T.C. Memo. 1970-339.

The petitioners claimed as deductions expenses attributable to Maguire's travel to Chicago and Los Angeles, along with the cost of Noz's travel to Utrecht (to the extent that the Utrecht expenses were not reimbursed by NYU). None of the evidence, testimonial or otherwise, establishes the price of the tickets for any of these trips (element (1)). Thus, even setting aside the question of whether the petitioners' evidence was in the correct form to satisfy section 274, i.e. "adequate records" or "sufficient evidence", the evidence does not contain sufficient information to satisfy element (1). We are also unable to determine the dates of these trips (element (2)) from the information in the record. Some notations in Noz's day planner might theoretically correspond to the dates of Maguire's Chicago trip and Noz's Utrecht trip. However, Noz offered no testimony as to the meaning or accuracy of these notations. It would be purely speculative for us to interpret these notations as an accurate record of the dates of Maguire's travel to Chicago for the Motorola meeting or Noz's travel to Utrecht.

No documentary evidence establishes the business purpose of the trips in question (element (4)). Thus, the petitioners have not established element (4) by "adequate records". Although both petitioners testified about the purpose of the

**[*31]** travel, the testimony was vague and contained no information about what activities the petitioners engaged in. The testimony thus does not establish the business purpose of the trips. This defect alone means that the petitioners did not establish element (4) by sufficient evidence. In addition, there is no evidence corroborating the petitioners' own statements about business purpose. Maguire offered no evidence corroborating his statements.[15] Noz submitted a copy of her day planner, but because she did not explain the significance of any of the notations in it, we are unsure how it corroborates her testimony. The evidence the petitioners offered does not establish the business purpose of the trips by "adequate records" or "sufficient evidence".

The petitioners have failed to establish that they met the requirements for deducting these additional travel expenses in accordance with section 274(d).[16]

---

[15]At trial, Maguire claimed that his testimony was corroborated in part by a thesis written by one of his students. However, that document was not offered into evidence. Therefore, we are unable to evaluate whether it corroborates any of Maguire's testimony.

[16]At trial, the petitioners testified that they retained original receipts for all of their expenses and submitted them to the IRS. This raises the question of whether these original receipts satisfy the strict-substantiation requirements of sec. 274(d). Aside from those receipts evidencing 11 of the petitioners' New York-Stockholm flights, none of the receipts the petitioners referred to in their testimony were offered into evidence. The petitioners failed to explain in testimony what information was on the missing receipts.

(continued...)

[*32] Because the petitioners have not substantiated their expenses pursuant to

section 274(d), they are not entitled to a deduction for those expenses.

3.    Meal Expenses

Deductions for meal expenses incurred during travel away from home are also

subject to the strict substantiation requirements of section 274(d). Sec. 274(d)(1). A

taxpayer may not deduct a meal expense unless he or she

----

[16](...continued)

As noted before, a taxpayer can substantiate expenses subject to sec. 274(d) by either (1) maintaining and producing "adequate records" establishing each element of an expense or (2) by "sufficient evidence", i.e. a combination of the taxpayer's own statement "containing specific information in detail" as to each element and some other corroborating evidence. Sec. 274(d); sec. 1.274-5T(c), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). To satisfy the requirement through "adequate records", the taxpayer must not only maintain "adequate records" but must also "produce" such records. (The regulation does not expressly say who the records must be produced to, the IRS or the court.) The petitioners had the opportunity to present at trial any records they maintained or to request that the IRS produce any records that the petitioners had previously submitted (and then to submit at trial any evidence so discovered). They did neither. Consequently, we do not know what the petitioners produced to the IRS, and we are, therefore, unable to determine whether the materials the petitioners produced established each element of their expenses by "adequate records". Had the petitioners testified specifically as to each of the elements they were required by sec. 274 to substantiate, we might conceivably be able to find that the missing receipts constituted corroborating evidence and that therefore they had substantiated their expenses by "sufficient evidence". As it is, we have neither the alleged receipts nor the petitioners' testimony as to the requisite elements of each expense. The petitioners bear the burden of proof with respect to deductions claimed on their return. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). On the basis of the record before us, we cannot find that the petitioners met this burden in substantiating expenses subject to sec. 274(d).

[*33] "substantiates":  (1) the amount of the expense, (2) the time and place of the travel during which it occurred, and (3) its business purpose.  See sec. 274(d).  The petitioners concede that they were away from home (i.e. traveling) when they incurred the meal expenses deducted on their return.  Therefore, the deductions are subject to the strict substantiation requirements of section 274(d).

We need not consider whether the form of the evidence meets the requirements of 274(d) because the evidence does not contain any of the information required to establish the three elements listed above.

In establishing the amounts of meal expenses (element (1)), a taxpayer is permitted by regulation to aggregate "the daily cost of the traveler's own breakfast, lunch, and dinner."  Sec. 1.274-5T(b)(2)(i), Temporary Income Tax Regs., supra.  However, the regulations do not authorize a taxpayer to aggregate all meal expenses for all trips in a given tax year.  See id.  The supplemental stipulation establishes that the petitioners paid $499 for meals consumed away from home during 2006.  It fails to establish the cost of each meal or the daily cost of meals.  No other evidence establishes these facts, either.  Therefore, the petitioners failed to establish element (1).

To satisfy element (2), the petitioners must establish the time and place of travel during which their meal expenses were incurred.  Neither the supplemental

**[\*34]** stipulation nor the record tells us on what trip the meal expenses were incurred. As we explained supra p. 7, the record establishes that Maguire incurred at least some meal expenses while traveling. Thus, some of the expenses were incurred during the trips taken by Maguire. But we do not know which trips. And even if we knew the trips during which the meals were consumed, the dates of travel for some of the petitioners' trips are not in the record. Thus, they have not established element (2). There is a similar deficit in establishing business purpose, element (3).

Because the petitioners have not substantiated their meal expenses in accordance with the requirements of section 274(d), they are not entitled to a deduction for these expenses.

### 4.    Listed Property

In order to deduct expenses attributable to the purchase of certain property-- "listed property"--a taxpayer must satisfy the strict-substantiation requirements of section 274(d). Sec. 274(d)(4). "Listed property" includes computers, computer-related peripheral equipment, and cellular phones. See id.; sec. 280F(d)(4)(A)(iv) and (v). Regulations specify that, with respect to listed property, the taxpayer must "substantiate" the following elements: (1) the cost of each individual item of listed property; (2) the amount of the business use and total use of the property; (3) the

[*35] date of the purchase or other expenditure; and (4) the business purpose of the expenditure or use. Sec. 1.274-5T(b)(1), (6), Temporary Income Tax Regs., 50 Fed. Reg. 46014, 46016 (Nov. 6, 1985). Each element can be substantiated by either "adequate records" or "sufficient evidence". See sec. 274(d).

On their 2006 joint income-tax return, the petitioners claimed as a deduction the $7,652.82[17] in expenses they incurred for the purchase of computers, computer-related equipment, and a cellular phone. By operation of the supplemental stipulation, the petitioners are considered to have actually incurred $7,652.82 in such expenses. We find that all $7,652.82 of the petitioners' computer, computer-related-equipment, and cellular-phone expenses are listed-property expenses. The petitioners are not entitled to a deduction for these expenses because they have failed to satisfy the strict substantiation requirements. The petitioners did not offer any evidence regarding the purchase prices of any individual items, aside from a cellular phone. Maguire testified that he purchased the phone for $854.81, but the petitioners offered no evidence corroborating his statement. Thus, the petitioners have failed to establish element (1). The petitioners also failed to offer any

---

[17]This amount is established by the statement in the IRS brief that the petitioners deducted $7,652.82 in computer and computer-related-equipment expenses (including the cost of a cellular phone).

 **[*36]** evidence of the dates when the items were purchased.  Thus, the petitioners failed to establish element (3).

We hold that the petitioners failed to substantiate these listed-property expenses as required by section 274(d).  They are, therefore, not entitled to deduct those expenses.

By operation of the supplemental stipulation, the petitioners are also considered to have incurred expenses of an unknown amount for the purchase of the equipment described in the April 15, 2009 letter.  The expenses the petitioners incurred for the purchase of these items are listed-property expenses, subject to the strict substantiation requirements of section 274(d).  The letter establishes element (4), the business purpose for which the items were purchased, which is relevant to element (2).  However, the letter does not establish the cost of any item or the total cost of all the items described (element (1)).  It also fails to establish the date on which any item was purchased (element (3)).  The petitioners are required, under section 274(d), to substantiate elements (1) and (3) by either "adequate records" or "sufficient evidence".  Because the trial evidence does not establish these elements, we hold that the petitioners are not entitled to deduct expenses incurred for the purchase of the equipment described in the April 15, 2009 letter.

**[\*37]** Finally, by operation of the supplemental stipulation, Noz is deemed to have incurred expenses of an indeterminate amount for the purchase of "electronics equipment". As we found supra p. 12, Noz's "electronics equipment" expenses are listed-property expenses and, therefore, subject to strict-substantiation requirements. The petitioners have not met any of the requirements of section 274(d) with respect to these expenses; they have not established (1) the cost of any item, (2) the amount of business and total use of any item, (3) the date any item was purchased, or (4) the business purpose for which any item was purchased. Consequently, we find that the petitioners are not entitled to a deduction for any of the "electronics equipment" expenses Noz incurred.

### 5. Deduction of Maguire's Expenses Pursuant to Section 174

The petitioners argue that, even if their miscellaneous deductions are not authorized by sections 162 and 274, expenses attributable to Maguire are nevertheless deductible pursuant to section 174. That section allows a taxpayer to immediately deduct research and experimental expenses incurred in connection with the taxpayer's trade or business. See sec. 174(a)(1). Section 174 applies only to "research and development costs in the experimental or laboratory sense." Sec. 1.174-2(a)(1), Income Tax Regs. "Whether expenditures qualify as research or

**[\*38]** experimental expenditures depends on the nature of the activity to which the expenditures relate". Id.

The petitioners have not put forth any evidence as to what types of activities Maguire engaged in while conducting his research. We are, therefore, unable to determine whether any of his expenses pertained to research in the "experimental or laboratory sense". Because the petitioners failed to put forward sufficient facts showing that Maguire's expenses are deductible pursuant to section 174, we reject this argument.

    C.    <u>Limitation on Deductions Attributable to Maguire Under Section 911(d)(6)</u>

Section 911 allows some individuals the option to exclude some foreign-earned income from gross income. Sec. 911(a)(1). The amount of foreign-earned income that a taxpayer may exclude under section 911 cannot exceed $82,400. Sec. 911(b)(2)(D). Section 911 also provides that where a taxpayer elects to exclude foreign-earned income, he or she cannot claim any deductions or credits allocable to the excluded income. Sec. 911(d)(6). On their 2006 return, the petitioners reported that approximately 79% of Maguire's salary was excluded from gross income under section 911. The IRS argues that, because the petitioners elected to exclude 79% of Maguire's salary from gross income, they are not

[*39] entitled to deduct any unreimbursed employee expenses that are properly allocable to the excluded portion of his salary.

Because we find that the petitioners are not entitled to deduct any of Maguire's disputed expenses, we need not decide whether any portion of those deductions is subject to the limitations of section 911(d)(6).

II.   Accuracy-Related Penalty

Under section 7491(c), the IRS bears the burden of production with respect to penalties.  In order to meet this burden, the IRS must come forward with sufficient evidence that it is appropriate to impose a particular penalty.  See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  If the IRS has satisfied the burden of production, the taxpayer then bears the burden of persuading the Court that the penalty is inappropriate because, for example, the taxpayer acted with reasonable cause and in good faith.  See Rule 142(a)(1); Higbee v. Commissioner, 116 T.C. at 446-447.

In the notice of deficiency, the IRS determined that the petitioners are liable for a section 6662(a) accuracy-related penalty of $1,662.20.  Section 6662(a) imposes a penalty of 20% of any underpayment attributable to (1) a substantial understatement of income tax or (2) negligence or disregard of rules and

**[\*40]** regulations.  See sec. 6662(a) and (b)(1) and (2).  In general, an understatement of income tax is the amount of tax required to be shown on the return less the amount of tax actually shown on the return.  See sec. 6662(d)(2)(A); sec. 1.6662-4(b)(2), Income Tax Regs.  An understatement is substantial if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1)(A); sec. 1.6662-4(b)(1), Income Tax Regs.  The amount of the understatement is reduced to the extent that (1) there was substantial authority for the taxpayer's treatment of the item or (2) the taxpayer had a reasonable basis for taking a position and the position was adequately disclosed.  Sec. 6662(d)(2)(B).  An understatement is attributable to negligence if the taxpayer did not make a reasonable attempt to comply with applicable tax laws or failed to exercise reasonable care in the preparation of a return.  See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  Negligence also includes a failure to maintain accurate records or to substantiate items properly.  Sec. 1.6662-3(b)(1), Income Tax Regs.

Whether any portion of an underpayment is attributable to negligence or a substantial understatement of income tax, no accuracy-related penalty is imposed on any portion with respect to which the taxpayer had reasonable cause and acted in good faith.  See sec. 6664(c)(1).  Whether the taxpayer acted

[*41] with reasonable cause and in good faith is determined on a case-by-case basis, taking into account all relevant facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's effort to properly determine his or her tax liability. Id.

The IRS determined that the petitioners are liable for a section 6662(a) accuracy-related penalty attributable to a substantial understatement of income tax or, alternatively, negligence. Because we find that the petitioners acted with reasonable cause and in good faith in preparing their 2006 income-tax return, we do not decide whether the IRS satisfied its burden of production with respect to its substantial understatement or negligence theories.

In preparing their return, the petitioners specifically consulted IRS publications 17 and 529. The petitioners also testified credibly that they retained original receipts for all of their deducted expenses. The petitioners introduced as evidence receipts for 11 of their flights between New York and Stockholm at a cost of $14,165.96. As for the remaining expenses, the petitioners did not introduce any receipts for those expenses at trial. However, the supplemental stipulation--that the petitioners "provided proof that the expenses herein dispute were paid"--indicates that the petitioners retained some sort of documentation evidencing their expenses

**[*42]** and produced it to the IRS.  As we have explained, none of the disputed expenses are deductible, and in particular, some of the expenses do not satisfy the strict substantiation requirements of section 274(d).  We nonetheless find that the petitioners at least partially complied with record-keeping requirements and that they made a good-faith effort to act in accordance with applicable tax law.  On the basis of all the facts and circumstances--in particular their testimony and the supplemental stipulation--we find that the petitioners acted with reasonable cause and in good faith in preparing their 2006 joint return.  They are therefore not liable for a section 6662(a) accuracy-related penalty.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.