T.C. Memo. 2013-65

UNITED STATES TAX COURT

VLADIMIR GOROKHOVSKY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24015-10.                    Filed February 28, 2013.

Vladimir Gorokhovsky, pro se.

<u>Frederic J. Fernandez</u> and <u>Mark J. Miller</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:  Respondent determined deficiencies and accuracy-related

penalties under section 6662(a)[1] for petitioner's taxable years 2006, 2007, and 2008

as follows:

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

**[*2]**

| Year | Deficiency | Accuracy-related penalty sec. 6662(a) |
|------|-----------|------------------------|
| 2006 | $55,153 | $11,030.60 |
| 2007 | 89,567 | 17,913.40 |
| 2008 | 55,938 | 11,187.60 |

The deficiencies stem from respondent's disallowance of various expenses and costs of goods sold petitioner reported on his Schedule C, Profit or Loss From Business, for each of the years at issue. Respondent also adjusted petitioner's income to account for certain alleged unreported items of income for each of the years at issue. We must determine:[2]

(1) whether petitioner may deduct Schedule C expenses, related to his law practice, of $132,162, $145,536, and $112,164 for taxable years 2006, 2007, and 2008, respectively.[3] We hold that petitioner may deduct some of those expenses;

---

[2]Our determinations result in corresponding computational adjustments to petitioner's self-employment tax liability.

[3]Following trial, respondent conceded $400 in supply expenses for petitioner's taxable year 2006 and $257 in office expenses for taxable year 2007. Respondent also conceded $844 in either supply expenses or office expenses for taxable year 2008; the exact item is unclear from respondent's posttrial brief.

**[\*3]**   (2)  whether petitioner may deduct Schedule C expenses related to his then wife's sale of skin care products[4] of $4,477 and $4,018 for taxable years 2006 and 2007, respectively.  We hold that he may not;

(3)  whether petitioner may deduct Schedule C depreciation related to his import-export business, Gorokhovsky Imports, of $7,807 and $7,863 for taxable years 2006 and 2007, respectively.  We hold that he may not;

(4)  whether petitioner failed to report gross receipts from his law practice of $40,894, $122,425, and $88,779 for taxable years 2006, 2007, and 2008, respectively.[5]  We hold that petitioner failed to report some of those receipts;

(5)  whether petitioner failed to report interest income of $5, $4, and $49 for taxable years 2006, 2007, and 2008, respectively.  We find that respondent conceded this issue on brief; and,

(6)  whether petitioner is liable for accuracy-related penalties under section 6662(a) for taxable years 2006, 2007, and 2008.  We hold that petitioner is so liable.

---

[4]Petitioner jointly filed his tax returns for the taxable years at issue.

[5]Following trial, respondent conceded that petitioner accurately reported deposits of $7,034.29 and $16,279.47 for taxable years 2007 and 2008, respectively.

[*4]                           FINDINGS OF FACT

At the time petition was filed, petitioner resided in Wisconsin.

Petitioner, an attorney since 2002, has maintained a solo practice in Wisconsin and the Northern District of Illinois. Specializing in criminal defense and aviation law, petitioner practices out of an office subleased from a law firm in Milwaukee, Wisconsin, and, purportedly, in a home office in Mequon, Wisconsin. He also maintains a condominium in Chicago which he uses primarily to facilitate his Federal law practice in a nearby Federal court. In addition to his law degree, petitioner has undergraduate degrees in accounting and business administration.

During the years at issue petitioner was married to Larissa Ocheretner. Ms. Ocheretner allegedly operated a skin care product business in 2006 and 2007. Petitioner managed his import-export business, Gorokhovsky Imports, during those two years as well.

Petitioner filed his taxable year 2006 and 2007 returns with three separate Schedules C: the first (Schedule C1) related to Gorokhovsky Imports; the second (Schedule C2) related to his law practice; and the third (Schedule C3) related to Ms. Ocheretner's skin care product business. Petitioner filed his taxable year 2008 return with only a Schedule C2.

**[*5]** I.  Schedule C1--Gorokhovsky Imports

On petitioner's 2006 and 2007 Schedules C1, he claimed depreciation and cost of goods sold deductions for his import business in the following amounts:

| Item | 2006 | 2007 |
|---|---|---|
| Depreciation and sec. 179 expense deduction | $807 | $527 |
| Cost of goods sold | 7,000 | 7,336 |

Respondent disallowed all petitioner's claimed deductions.

II.  Schedule C2--Petitioner's Law Practice

In connection with his law practice, petitioner claimed a $139,199 business expense deduction on his 2006 Schedule C2.  Respondent disallowed $132,162 of this amount.  Respondent also disallowed all of petitioner's claimed business expense deductions totaling $146,536 and $112,164 reported on his 2007 and 2008 Schedules C2, respectively.  The following table demonstrates the composition of respondent's negative adjustments:

| Expense | 2006 | 2007 | 2008 |
|---|---|---|---|
| Travel | $6,664 | $9,493 | $2,270 |
| Taxes and licenses | 6,384 | -0- | -0- |
| Repairs and maintenance | 7,168 | 8,123 | 2,276 |
| Interest--other | 340 | 2,129 | 139 |

| | | | |
|---|---|---|---|
| [*6] Insurance (other than health) | 4,359 | 4,752 | 10,050 |
| Advertising | 1,303 | 700 | 9,932 |
| Business use of home | 10,445 | 7,615 | 11,954 |
| Office | 21,583 | 22,996 | 20,099 |
| Depreciation and sec. 179 | 17,445 | 8,392 | 4,557 |
| Car and truck | 2,990 | 18,534 | 6,975 |
| Other--tools | 1,105 | -0- | -0- |
| Other--telephone | 3,138 | 3,124 | 5,396 |
| Other--storage | 1,086 | 1,099 | -0- |
| Other--printing | 1,456 | 1,587 | -0- |
| Other--postage | 469 | 1,970 | 1,154 |
| Other--parking | 5,211 | 4,328 | 2,918 |
| Other--outside services | 18,018 | 5,369 | -0- |
| Other-misc. | 1,562 | -0- | -0- |
| Other--license | 400 | 50 | 50 |
| Other--laundry | 774 | 1,316 | -0- |
| Other--filing fees | 369 | 1,448 | 3,902 |
| Other--education | 10,126 | 1,405 | 2,016 |
| Other--client | 3,675 | 8,783 | 1,356 |
| Other--books | 935 | -0- | -0- |
| Other--bank charges | 820 | 674 | 1,207 |
| Accounting | 265 | 300 | 350 |
| Meals and entertainment | 4,372 | 1,817 | 2,511 |
| Utilities | -0- | 1,880 | -0- |

| [*7] Supplies | -0- | 10,715 | 2,078 |
|---|---|---|---|
| Legal and professional services | -0- | 2,737 | 4,388 |
| Other--dues | -0- | 2,853 | 3,497 |
| Rent/lease--other business property | -0- | 11,090 | 8,484 |
| Other--janitorial | -0- | -0- | 1,164 |
| Other--client settlements | -0- | -0- | 2,597 |

At trial petitioner produced Excel spreadsheets listing the monthly sums for each category of expense reported on his Schedules C2. Petitioner meticulously and contemporaneously maintained these documents so that he could monitor the financial health of his law practice. The spreadsheets, however, neither itemize expenses nor provide details as to the nature of any expenditure. Petitioner also offered at trial monthly bank statements, credit card statements, and copies of canceled checks and check registers.

Regarding his car and truck expenses, petitioner produced coded mileage logs which list the starting point and destination of each of his business trips and the distance traveled between such points.

Respondent also determined that petitioner had unreported income from his law practice for each of the years at issue and correspondingly adjusted result of several unidentified deposits in petitioner's bank accounts during those years.

[*8] III.  Schedule C3--Ms. Ocheretner's Skin care Product Business

On his taxable year 2006 and 2007 Schedules C3, petitioner claimed business expense deductions of $4,477 and $4,018, respectively, for his then wife's skin care product business.  Respondent disallowed those claimed deductions.  The following table demonstrates the composition of respondent's negative adjustments:

| Expense | 2006 | 2007 |
|---|---|---|
| Other expenses | $118 | -0- |
| Taxes and licenses | 149 | -0- |
| Supplies | 387 | -0- |
| Rent/lease--other business property | 1,381 | -0- |
| Car and truck | 1,363 | -0- |
| Cost of goods sold | 699 | $3,638 |
| Depreciation and sec. 179 | 380 | 380 |

As with his attempt to substantiate his law practice expenses, petitioner produced Excel spreadsheets listing the monthly sum of each category of expense reported on his Schedules C3 at trial.  The spreadsheets again neither itemized expenses nor provided details as to the nature of any of petitioner's expenditures.

**[*9]** IV.  Interest Income

Respondent adjusted petitioner's interest income to purportedly reflect amounts shown on Forms 1099-INT, Interest Income.  These adjustments resulted in increases in interest income of $5, $4, and $49 for taxable years 2006, 2007, and 2008, respectively.

V.  Procedural Matters

Petitioner produced several documents at trial in an attempt to substantiate his claimed deductions and evidence that certain items of income were not earned during the years at issue.  We repeatedly apprised petitioner of the importance of correlating the expenses listed on such documents with the deductions claimed on his tax returns and fully articulating on brief his position regarding the alleged unreported items of income.  At trial petitioner requested and was granted additional time to prepare his posttrial briefs.  We also advised petitioner that absent unforseen circumstances we would not further extend the filing deadline.  Following trial, petitioner filed a posttrial motion to extend time to file a trial brief citing his health as interfering with his ability to meet set deadlines.  We granted petitioner's motion; however, he failed to file a posttrial brief on the ensuing extended filing date or at any point thereafter.

**[\*10]**                                          OPINION

The Commissioner's determinations in a notice of deficiency are presumed

correct, and taxpayers bear the burden of proving that the Commissioner's

determinations are incorrect.  Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111,

115 (1933).[6]  Under section 7491(a), if the taxpayer produces credible evidence

with respect to any factual issue relevant to ascertaining the taxpayer's liability for

tax and meets other requirements, the burden of proof shifts from the taxpayer to the

Commissioner as to that factual issue.  Petitioner has neither alleged that

---

[6]On rare occasions this Court has recognized an exception to these rules in cases involving unreported income where the Commissioner introduces no substantive evidence but relies solely on the presumption of correctness.  Jackson v. Commissioner, 73 T.C. 394, 401 (1979).  In such cases, if the taxpayers challenge the notice of deficiency on the ground that it is arbitrary, then the determination is treated as a "naked" assessment and the presumption of correctness does not attach.  Id.  However, this is a limited exception, and it does not apply when the Commissioner has provided a minimal evidentiary foundation.  Petzoldt v. Commissioner, 92 T.C. 661, 687-688 (1989); Fankhanel v. Commissioner, T.C. Memo. 1998-403, 1998 Tax Ct. Memo LEXIS 424, aff'd without published opinion, 205 F.3d 1333 (4th Cir. 2000).

Presently, respondent relies on bank deposits to determine petitioner's unreported income for the years in issue.  "A bank deposit is prima facie evidence of income and respondent need not prove a likely source of that income."  Tokarski v. Commissioner, 87 T.C. 74, 77 (1986) (citing Estate of Mason v. Commissioner, 64 T.C. 651, 656-657 (1975), aff'd, 566 F.2d 2 (6th Cir. 1977)).  Accordingly, the limited exception does not apply in this case.

**[*11]** section 7491(a) applies nor established his compliance with its requirements. Therefore, the burden of proof remains on petitioner.[7]

I. Deductions

Section 162(a) provides a deduction for certain business-related expenses. In order to qualify for the deduction under section 162(a), "an item must (1) be 'paid or incurred during the taxable year', (2) be for 'carrying on any trade or business', (3) be an 'expense', (4) be a 'necessary' expense, and (5) be an 'ordinary' expense." Commissioner v. Lincoln Sav. & Loan Ass'n, 403 U.S. 345, 352 (1971); Deputy v. du Pont, 308 U.S. 488, 495 (1940) (to qualify as "ordinary", the expense must relate to a transaction "of common or frequent occurrence in the type of business involved"). Whether an expense is ordinary is determined by time, place, and circumstance. Welch v. Helvering, 290 U.S. at 113-114. Taxpayers also must maintain sufficient records to substantiate their deductions. See sec. 6001; Petzoldt v. Commissioner, 92 T.C. 661, 686 (1989); see also Hradesky v. Commissioner, 65 T.C. 87 (1975), aff'd, 540 F.2d 821 (5th Cir. 1976).

---

[7]As noted supra, petitioner failed to file a posttrial brief. Accordingly, it is within our discretion to dismiss this case entirely. See Rules 123, 151(a); Stringer v. Commissioner, 84 T.C. 693, 704-708 (1985), aff'd without published opinion, 789 F.2d 917 (4th Cir. 1986). However, we will decide the case on the merits. See, e.g., D'Errico v. Commissioner, T.C. Memo. 2012-149, 2012 Tax Ct. Memo LEXIS 149, at *17-*18.

**[*12]** Certain expenses described in section 274 are subject to strict substantiation rules. No deductions are allowed for, among other things, traveling expenses (including meals and lodging away from home), entertainment expenses, gifts, and expenses with respect to "listed property" defined in section 280F(d)(4) "unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement": (1) the amount of the expense or other item; (2) the time and place of the travel, entertainment or use, or date and description of the gift; (3) the business purpose of the expense or other item; and (4) in the case of entertainment or gifts, the business relationship to the taxpayer of the recipients or persons entertained. Sec. 274(d). If a taxpayer cannot satisfy the substantiation burden imposed by section 274(d) with respect to an expense to which it applies, he fails to carry his burden of establishing that he is entitled to deduct that expense, regardless of any equities involved. Id.; Nicely v. Commissioner, T.C. Memo. 2006-172, 2006 Tax Ct. Memo LEXIS 174, at *7-*8; sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

Nonetheless, with respect to expenses not covered by section 274(d), this Court may estimate the amount of allowable deductions where there is evidence

[*13] that deductible expenses were incurred. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). In order to do so, however, we must have some rational basis upon which to make such an estimate. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). In estimating the amount allowable, we bear heavily against the taxpayer where the inexactitude of the record is of his or her own making. See Cohan v. Commissioner, 39 F.2d at 544.

    A. Schedule C2: Petitioner's Law Practice

       1. General Business Deductions

Petitioner produced numerous bank statements, canceled checks, check registers, contemporaneous personal records, credit card statements, and Excel spreadsheets in an attempt to substantiate his reported business expenses. We indicated the probative limitations of petitioner's isolated, nonitemized Excel spreadsheets in a previous, similar matter before the Court. See Gorokhovsky v. Commissioner, T.C. Memo. 2012-206, 2012 Tax Ct. Memo 208, at *11-*13. In the present case, however, petitioner supplemented his Excel spreadsheets with further supportive documentation. Nonetheless, petitioner made no attempt to use the evidence in the record to brief his legal position following trial. While we need not undertake the work of sorting through every piece of evidence petitioner provided in an attempt to find support for his ultimate legal positions, see, e.g.,

**[\*14]** <u>Hale v. Commissioner</u>, T.C. Memo. 2010-229, 2010 WL 4120880, at \*2

(refusing to sort through 317 pages of disorganized evidence in an attempt to

determine whether a taxpayer provided adequate substantiation when that taxpayer

failed to file a brief), petitioner's canceled checks and/or check registers clearly

substantiate certain business expenses he incurred for his law practice in the taxable

years at issue.  In particular, petitioner's Continental Bank account records evidence

substantiated expenses of $12,066.18 for taxable year 2006, <u>see</u> <u>infra</u> app. A,

$7,405 for taxable year 2007, <u>see</u> <u>infra</u> app. B), and $5,544.97 for taxable year

2008, <u>see</u> <u>infra</u> app. C.  Petitioner's Wells Fargo account records also evidence

additional substantiated expenses of $4,269.38 for taxable year 2006.

<u>See</u> <u>infra</u> app. D.[8]  Petitioner may correspondingly deduct these amounts pursuant to

section 162.

---

[8]Petitioner submitted a Wells Fargo account check register for his taxable
year 2007 which superficially demonstrates that he made certain expenditures
during that year; however, the corresponding canceled checks were not offered into
evidence.  While we find elsewhere that various other check registers showing
expenditures in other years supported deductions even though certain canceled
checks were not before the Court, those other registers on a whole were congruous
with the catalog of canceled checks from the corresponding accounts.  We cannot
ascribe the same credibility to the 2007 Wells Fargo account check register without
any correlative documentation.

**[\*15]** Notwithstanding this finding, most of petitioner's general business deductions remain unsubstantiated. Though we may estimate additional expenses if we have a rational basis to do so, see Vanicek v. Commissioner, 85 T.C. at 742-743, the record before us does not permit us to formulate reasoned conclusions as to petitioner's incurred expenses.

### 2. Home Office Deduction

Section 280A generally provides that no deduction otherwise allowable shall be allowed with respect to the business use of a taxpayer's residence. Sec. 280A(a). However, as relevant to this case, a deduction may be allowed to the extent it is allocable to a portion of a dwelling unit which is exclusively used on a regular basis as: (1) the principal place of business for any trade or business of the taxpayer; or (2) a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business. Sec. 280A(c)(1)(A) and (B).

Petitioner maintains that he used an office located in the basement of his home as his principal place of business.[9] The evidence concerning this point is

---

[9]Petitioner did not assert at trial that expenses related to his condominium in Chicago qualified as a deduction pursuant to sec. 280A(c)(1). Furthermore, it is unclear from the record whether petitioner ever claimed an expense deduction related to the Chicago condominium.

**[\*16]** limited to petitioner's testimony that the office has a law library and "four computers". No evidence was submitted demonstrating the nature or extent of the work performed in the basement, whether petitioner met clients there, or any other facts which might shed light on the purported business use of the area. Furthermore, petitioner admitted that he subleased a separate office in Milwaukee for his law practice and offered no evidence to negate the inference that office functioned as his principal place of business. According to the limited record in this case, we cannot find that petitioner is entitled to home office deductions pursuant to section 280A(c)(1) for the years at issue.[10]

### 3. Meal and Travel Expenses

Petitioner's reported meal and travel expenses are subject to heightened substantiation requirements, noted supra. See sec. 274(d)(1). Petitioner failed to adduce any evidence purporting to substantiate his meal expenses for the years at issue. Without any corroborative documentation, we find that petitioner has failed to substantiate these expenses.

---

[10]The flush language of sec. 280A indicates that the term "principal place of business" includes "a place of business which is used by the taxpayer for the administrative or management activities of any trade or business of the taxpayer if there is no other fixed location of such trade or business where the taxpayer conducts substantial administrative or management activities of such trade or business." There is no evidence in the record indicating that petitioner performed any administrative or management activities in his home basement.

[*17] However, petitioner meticulously maintained coded travel logs which superficially support his travel expense deductions.[11] Following trial, petitioner submitted additional documentation which supplements his logs and expressly articulates the business purpose of each of his business trips. Each entry in petitioner's submitted records is categorized into one of three codes. At trial petitioner explained that "code 1" represented travel from his home to his subleased office in Milwaukee or the Milwaukee county courthouse; "code 2" represented travel from his condo in Chicago to the Daley Center or to a Federal courthouse; and, "code 3" represented all other business travel neither originating nor concluding at his home. We find that petitioner's entries labeled "code 2"[12] and "code 3" in Exhibits 58-J, 60-J, and 66-J specify the time, place, and business

---

[11]When respondent questioned petitioner about two random items on the 2006 mileage spreadsheet, petitioner, unable to quickly cross-reference other documentation immediately available, admitted that those specific mileage log entries were in error; however, we do not believe such minor errors infect the entirety of the logs.

[12]A taxpayer may deduct travel expenses that are reasonable, necessary, and directly attributable to the taxpayer's business. Sec. 162(a)(2); sec. 1.162-2(a), Income Tax Regs. If a trip is undertaken for both business and personal reasons, travel expenses are deductible only if the primary purpose of the trip is business. See sec. 1.162-2(b)(1), Income Tax Regs. Petitioner convincingly testified that he used his Chicago condominium "primarily" for his practice in Federal court. The credibility of this testimony is amplified by petitioner's meticulous records evidencing the business purpose of his "code 2" travel in Chicago.

**[*18]** purpose of petitioner's business travels and, accordingly, satisfy the heightened substantiation requirements of section 274(d)(1).

Code 1, however, represents travel to or from petitioner's home. As a general rule, expenses for traveling between one's home and one's place of business or employment constitute commuting expenses and are, consequently, nondeductible personal expenses. See sec. 262(a); Fausner v. Commissioner, 413 U.S. 838 (1973); Commissioner v. Flowers, 326 U.S. 465 (1946); Feistman v. Commissioner, 63 T.C. 129, 134 (1974). Three jurisprudential or administrative exceptions to this rule have developed over time: (1) the home office exception; (2) the temporary distant worksite exception; and (3) the regular work location exception. See Bogue v. Commissioner, T.C. Memo. 2011-164, 2011 Tax Ct. Memo LEXIS 164, at *16-*17. We address the applicability of each to petitioner's "code 1" travel.

### a. The Home Office Exception

The first judicially created exception permits taxpayers to deduct expenses incurred traveling between their residence and a place of business if the residence has a home office which serves as the taxpayer's principal place of business. See Strohmaier v. Commissioner, 113 T.C. 106, 113-114 (1999); Wis. Psychiatric Servs., Ltd. v. Commissioner, 76 T.C. 839, 849 (1981); Curphey v. Commissioner,

**[\*19]** 73 T.C. 766, 777-778 (1980). We have consistently equated the "principal place of business" requirement for the home office exception with the "principal place of business" requirement under section 280A. See Walker v. Commissioner, 101 T.C. 537, 546 (1993); Curphey v. Commissioner, 73 T.C. at 777.

As noted supra, we found that petitioner's purported basement office in Mequon, Wisconsin, did not qualify as a "principal place of business" pursuant to section 280A. Accordingly, the home office exception is not applicable regarding petitioner's expenses incurred during his "code 1" travel.

### b. The Temporary Distant Worksite Exception

Taxpayers are entitled to deduct travel and lodging expenses stemming from work at a series of temporary worksites during the year, all of which were distant from the taxpayer's residence. Schurer v. Commissioner, 3 T.C. 544 (1944).[13] The IRS has memorialized the temporary distant worksite exception in Rev. Rul. 99-7, 1999-1 C.B. 361, stating: "A taxpayer * * * may deduct daily transportation expenses incurred in going between the taxpayer's residence and a temporary work location outside the metropolitan area where the taxpayer lives and normally works." The revenue ruling thereafter defines a temporary work location as one

---

[13]Our decision in Schurer v. Commissioner, 3 T.C. 544, 547 (1944), was based in part on the fact that the taxpayer had no "principal place of business" during the taxable year at issue.

**[\*20]** that "is realistically expected to last (and does in fact last) for 1 year or less".  Id.

Petitioner lives in Wisconsin and has maintained his law practice there for almost a decade.  Consequently, petitioner's code 1 travel does not fit within this exception.

### c.  The Regular Work Location Exception

The regular work location exception was originally articulated by the Commissioner in Rev. Rul. 90-23, 1990-1 C.B. 28.  The current iteration is found in Rev. Rul. 99-7, 1999-1 C.B. at 362, which states:  "If a taxpayer has one or more regular work locations away from the taxpayer's residence, the taxpayer may deduct daily transportation expenses incurred in going between the taxpayer's residence and a temporary work location in the same trade or business, regardless of the distance."[14]

As noted supra, petitioner has not suggested that any of his travel was to a temporary work location.  Therefore, petitioner's code 1 travel does not fit within this exception.

---

[14]We have previously questioned the rationale of this exception and have simply treated it as a concession by the Commissioner.  See Bogue v. Commissioner, T.C. Memo. 2011-164, 2011 Tax Ct. Memo LEXIS 164, at \*16-\*17.

**[\*21]**                    d.  <u>Conclusion</u>

In sum, we conclude that petitioner has failed to establish that his "code 1" travel meets any exception to the general rule treating commuting expenses as nondeductible personal expenses.

B.  <u>Petitioner's Schedules C1 and C3</u>

Petitioner provided no documentation regarding expenses reported on his Schedules C1 and C3 for the years at issue.  Accordingly, we find that petitioner failed to substantiate those expenses.

II.  <u>Unreported Income</u>

Section 61(a)(1) defines gross income as all income from whatever source derived, including compensation for services, such as wages, salaries, and bonuses. <u>See also</u> sec. 1.61-2(a)(1), Income Tax Regs.  Bank deposits serve as prima facie evidence of income.  <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986) (citing <u>Estate of Mason v. Commissioner</u>, 64 T.C. 651, 656-657 (1975), <u>aff'd</u>, 566 F.2d 2 (6th Cir. 1977)); <u>see also</u> <u>Clayton v. Commissioner</u>, 102 T.C. 632, 645 (1994).

In a posttrial brief respondent itemized unidentified deposits to petitioner's various bank accounts for the taxable years at issue and determined that those deposits totaled $40,894.17, $90,295.89, and $72,500 for taxable years 2006,

**[\*22]** 2007, and 2008, respectively. Respondent's totals on brief for taxable years 2006 and 2008 are consistent with his assertions following posttrial concessions; however, the itemized totals on brief for taxable year 2007 differ from those following concessions by approximately $25,095 ($115,391 following concessions and $90,295.89 on brief). We construe respondent's position on brief as an additional concession in this case.

At trial petitioner identified various deposits at issue as nontaxable balance transfers or payments relating to his wife's business. Nonetheless, petitioner never submitted any credible evidence establishing that such transfers were legitimately effected nor explained how his wife's alleged payments were reported on the relevant tax returns.

Petitioner also indicated that separate deposits of $5,000 and $11,000 from taxable year 2007 represent payments from a debtor on a loan he had previously advanced. Petitioner supplemented the record following trial with an undated, unsigned "commercial promissory note" purporting to memorialize his $15,000 advance. Nonetheless, petitioner failed to submit any financial documents evincing either the actual transfer of $15,000 or payments of interest on the alleged loan. We find that the record is insufficient to support petitioner's position.

[*23] Petitioner further referenced a deposit of $55,000 in taxable year 2008, testifying that the deposit represented a retainer from a Chinese company that had hired him to perform a "due diligence and feasibility study" regarding the potential importation of their products.  However, petitioner did not submit a copy of the alleged retainer agreement to the Court nor provide any probative evidence pertaining to his alleged work on the project.[15]  We decline to accept petitioner's self-serving, unverified, and undocumented testimony.  See Tokarski v. Commissioner, 87 T.C. at 77.

In sum, we find that petitioner failed to report income in the itemized amounts represented by respondent in his posttrial brief.

III.  Interest Income

In the introductory statement of issues in respondent's posttrial brief, he indicated that the question of whether petitioner failed to report interest income of $5, $4, and $49 for taxable years 2006, 2007, and 2008, respectively, remained unresolved.  However, at no point in the remainder of his brief did he address this issue.  Indeed, the Forms 1099 upon which respondent purportedly made his

---

[15]The only evidence in the record regarding this study is petitioner's vague self-created timesheet labeled "Shanghai".

**[\*24]** determinations were never offered into evidence. Accordingly, we find that respondent has conceded the issue.

IV. Section 6662(a) Penalty

Section 6662(a) and (b)(1) and (2) provides for an accuracy-related penalty of 20% of the portion of any underpayment attributable to, among other things, negligence or intentional disregard of rules or regulations or any substantial understatement of income tax. Negligence includes any failure to make a reasonable attempt to comply with the provisions of the Code, including any failure to maintain adequate books and records or to substantiate items properly. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. A substantial understatement of income tax exists for an individual if the amount of the understatement exceeds the greater of 10% of the tax required to be shown on the return or $5,000. See sec. 6662(d)(1)(A). We will focus our inquiry on whether petitioner exhibited negligence or intentional disregard of rules or regulations for the years at issue.[16]

Section 6664(c)(1) provides that the penalty shall not be imposed with respect to any portion of an underpayment if the taxpayer shows that there

_____

[16]Only one accuracy-related penalty may be applied with respect to any given portion of an underpayment, even if that portion is subject to the penalty on more than one of the grounds set forth in sec. 6662(b). Sec. 1.6662-2(c), Income Tax Regs.

**[\*25]** was reasonable cause for, and that he acted in good faith with respect to, that portion.

> The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. \* \* \* Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of \* \* \* law that is reasonable in light of all the facts and circumstances, including the experience, knowledge, and education of the taxpayer. \* \* \*

Sec. 1.6664-4(b)(1), Income Tax Regs.

Respondent bears the burden of production with respect to the penalty. Sec. 7491(c). The burden imposed by section 7491(c) is "only to come forward with evidence regarding the appropriateness of applying a particular addition to tax or penalty to the taxpayer." Good v. Commissioner, T.C. Memo. 2008-245, 2008 WL 4756483, at \*9. Once that burden is met, petitioner bears the burden of proving that he is entitled to relief under section 6664(c)(1). Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

Respondent submits that petitioner's background as an attorney with undergraduate accounting degrees and a degree in business administration demonstrates that he should have recognized the importance of maintaining adequate records and substantiating all items reported on his return. While petitioner did meticulously maintain records evidencing certain expenses, he failed

**[\*26]** to offer records supporting many claimed expenses as well as credible

documentation which might shed light on the unidentified deposits at issue. As a

result, we find that respondent met his burden of production on this issue.

Petitioner did not address the section 6662 penalties at trial and failed to file

a posttrial brief. However, petitioner's tax returns for the taxable years at issue

were prepared by an accountant.[17] Good-faith reliance on the advice of an

independent professional, such as an accountant, may demonstrate reasonable

cause. United States v. Boyle, 469 U.S. 241, 251 (1985); Canal Corp. & Subs. v.

Commissioner, 135 T.C. 199, 218 (2010); sec. 1.6664-4(b), Income Tax Regs. To

prevail in this effort, however, the taxpayer must show that he: (1) selected a

competent adviser with sufficient expertise to justify reliance; (2) supplied the

adviser with necessary and accurate information; and (3) actually relied in good

faith on the adviser's judgment. Neonatology Assocs., P.A. v. Commissioner, 115

T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002); see Sanford v.

Commissioner, T.C. Memo. 2008-158, 2008 Tax Ct. Memo LEXIS 159, at \*17.

Petitioner offered no testimony or other evidence concerning the expertise of his

---

[17]At trial petitioner indicated that the expense of having his Wisconsin-based accountant travel to the place of trial in Chicago was prohibitive. Nonetheless, petitioner requested that the trial take place in Chicago and should have anticipated the expense at that time.

**[*27]** accountant, the information he allegedly provided to his accountant, or his actual good-faith reliance on his accountant's advice. Accordingly, we find that petitioner has failed to satisfy his burden.

## V. Conclusion

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.

[*28] APPENDIX A--2006 Continental Bank

| Check No. | Transaction description | Amount |
|---|---|---|
| 1252 | Business Cards | $211.00 |
| 1257 | Sarah Decorah[1] | 146.91 |
| 1258 | Fred Tabak[2] | 400.00 |
| 1274 | Sarah Decorah | 113.00 |
| 1275 | Fred Tabak | 400.00 |
| 1276 | Clerk of Court | 259.00 |
| 1279 | Citi Business Card | 701.31 |
| 1284 | Clerk of Federal Court | 250.00 |
| 1288 | Office Depot | 36.09 |
| 1298 | Fred Tabak | 400.00 |
| 1305 | Cook County Sheriff | 33.40 |
| 1310 | Clerk of U.S. Dist. Court | 250.00 |
| 1312 | Office Depot | 126.67 |
| 1321 | Fred Tabak | 400.00 |
| 1323 | Sarah Decorah | 1,020.63 |
| 1330 | Clerk of Circuit Court | 175.00 |
| 1333 | Sarah Decorah | 444.59 |
| 1334 | Sarah Decorah | 115.08 |
| 1335 | Sarah Decorah | 106.56 |
| 1346 | Home Depot | 166.40 |
| 1347 | Clerk of City Court | 250.00 |

| [*29] 1349 | Fred Tabak | 400.00 |
|---|---|---|
| 1359 | Home Depot | 201.50 |
| 1361 | Wis. Legal Forms | 5.25 |
| 1379 | Fred Tabak | 400.00 |
| 1380 | State Bar of Wis. | 25.00 |
| 1383 | Sarah Decorah | 237.89 |
| 1384 | Sarah Decorah | 179.56 |
| 1390 | Clerk of Circuit Court | 259.50 |
| 1396 | Sarah Decorah | 245.92 |
| 1397 | Sarah Decorah | 128.20 |
| 1398 | State Bar | 199.00 |
| 1399 | Sarah Decorah | 217.36 |
| 1400 | Clerk of Court | 122.00 |
| 1402 | Fred Tabak | 400.00 |
| 1407 | Clerk of Court | 5.00 |
| 1408 | Attorney Assist | 39.80 |
| 1409 | Attorney Assist | 82.74 |
| 1410 | Attorney Assist | 334.34 |
| 1411 | Attorney Assist | 1225.96 |
| 1415 | Attorney Assist | 216.09 |
| 1418 | Dr. S. Lisowski[3] | 300.00 |
| 1426 | Office Depot | 65.43 |

| [*30] 1432 | Attorney Assist | 427.86 |
| 1433 | Attorney Assist | 129.12 |
| 1434 | Attorney Assist | 206.48 |
| 1437 | Office Depot | 6.54 |
| Total | | 12,066.18 |

[1]Ms. Decorah worked for Attorney Assist.
[2]Petitioner subleased his Milwaukee office from Mr. Tabak.
[3]Petitioner consulted Dr. Lisowski regarding various cases.

## [*31] APPENDIX B--2007 Continental Bank

| Check No. | Transcript description | Amount |
|---|---|---|
| 1431 | Suzanne Lisowski | $81.25 |
| 1432 | Attorney Assist | 527.86 |
| 1433 | Attorney Assist | 206.48 |
| 1436 | Clerk of Traffic Court | 236.40 |
| 1437 | Office Depot | 6.54 |
| 1440 | Fred Tabak | 450.00 |
| 1441 | Supreme Court of Wis. | 6.00 |
| 1442 | V. Publishing | 350.00 |
| 1447 | Fred Tabak | 450.00 |
| 1452 | Clerk of Court | 158.50 |
| 1468 | Clerk of Federal Court | 250.00 |
| 1469 | Fred Tabak | 450.00 |
| 1482 | Attorney Assist | 1,254.53 |
| 1484 | Clerk of Court of Appeal | 150.00 |
| 1520 | Fred Tabak | 450.00 |
| 1541 | State Bar of Wis. | 25.00 |
| 1546 | Office Depot | 201.56 |
| 1555 | Francine L. O'Claire[1] | 18.50 |
| 1556 | Fred Tabak | 450.00 |
| 1558 | Clerk of Court | 524.00 |

| [*32] 1563 | Lake County Sheriff | 44.10 |
|---|---|---|
| 1608 | Fred Tabak | 500.00 |
| 1610 | Clerk of Court | 5.00 |
| 1611 | Clerk of Court | 5.00 |
| 1629 | Ref. and Info. Service | 79.00 |
| 1631 | Fred Tabak | 500.00 |
| 1660 | Lowe's | 25.28 |
| Total | | 7,405.00 |

[1]This payment was for a copy of a transcript.

[*33] APPENDIX C--2008 Continental Bank

| Check No. | Transaction description | Amount |
|---|---|---|
| 1690 | Clerk of Court | 189.50 |
| 1691 | Fred Tabak | 500.00 |
| 1714 | Fred Tabak | 500.00 |
| 1721 | Office Depot | 43.22 |
| 1745 | Luxury Furnishings | 950.00 |
| 1746 | Clerk of Milwaukee Cty. | 158.50 |
| 1748 | Office Dept Credit Plan | 50.68 |
| 1760 | Office Depot | 15.84 |
| 1823 | V. Publishing | 450.00 |
| 1829 | Fred Tabak | 500.00 |
| 1830 | Clerk of Cook County | 319.00 |
| 1831 | Clerk of Cook County | 319.00 |
| 1843 | Office Dept. Credit Plan | 458.77 |
| 1869 | Clerk of Circuit Court | 123.50 |
| 1870 | Fred Tabak | 500.00 |
| 1906 | Sarah Decorah | 73.89 |
| 1912 | Office Depot | 269.57 |
| 1933 | Clerk of Circuit Court | 123.50 |
| Total | | 5,544.97 |

## [*34] APPENDIX D--2006 Wells Fargo

| Check No. | Transaction description | Amount |
|---|---|---|
| 1001 | State Bar of Wis. | $441.00 |
| 1018 | Fred Tabak | 400.00 |
| 1039 | Wash. County Sheriff | 22.57 |
| 1047 | Office Depot | 69.66 |
| 1055 | Fred Tabak | 400.00 |
| 1071 | Office Depot | 47.27 |
| 1078 | Fred Tabak | 750.00 |
| 1090 | Office Depot | 9.70 |
| 1103 | Fred Tabak | 450.00 |
| 1108 | Home Depot | 1,229.18 |
| 1109 | Fred Tabak | 450.00 |
| Total | | 4,269.38 |